**CITY OF TULSA et al. v. METROPOLITAN JEWELRY CO.**

**SAME v. BENJAMIN JEWELER RICE CO.**

Nos. 8847, 8848—Opinion Filed April 30, 1918.

Rehearing Denied Jan. 7, 1919.

(176 Pac. 956.)

**1. Licenses—Nature—"Revenue Measure."**

An ordinance which imposes a license tax greatly in excess of the probable amount necessary to issue the license, inspect and regulate the business, is a revenue measure and void under the provision of a city charter which prohibits the levying of an occupation tax for general revenue purposes.

**2. Injunction—Enforcement of Ordinance—Equity Jurisdiction.**

Equity by injunction will interfere to prevent the enforcement of an illegal and oppressive ordinance where it is made to appear valuable property rights are invaded and irreparable injury will result from its enforcement.

(Syllabus by Springer, C.)

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Actions for injunction by the Metropolitan Jewelry Company against the City of Tulsa and others, and by the Benjamin Jeweler Rice Company against the same defendants. Demurrer to petitions overruled, and permanent injunctions granted, and defendants in each action bring error. Judgments affirmed.

John B. Meserve and John R. Woodard, for plaintiffs in error.

Hulette F. Aby and William F. Tucker, for defendants in error.

Opinion by SPRINGER, C. In this opinion the plaintiffs in error will be referred to as defendants, and the defendants in error will be referred to as plaintiffs, that being the status of the parties in the lower court. Both cases presenting the same identical question, cases 8847 and 8848 are consolidated in this opinion.

The plaintiff instituted suit in the lower court against the defendants to restrain by injunction the enforcement of what is alleged to be an illegal, oppressive, confiscatory, and void city ordinance. That part of the petition necessary for a disposition of this case alleges:

"That the plaintiff would show that, in compliance with its articles of incorporation and with the certificate of incorporation issued to it by the secretary of state of Oklahoma, it began a mercantile business in the city of Tulsa some time during the latter part of the year 1913, buying and selling jewelry and other goods, wares, and merchandise incident to said business with the sole and only intent on the part of said plaintiff to become a permanent resident of the city of Tulsa, and has ever since been a resident thereof, conducting the business under the authority given to it by its said certificate and articles of incorporation as aforesaid; that, in the conduct of its said business, said plaintiff has disposed of its said wares and merchandise by retail, and has, since the beginning of its said business, on numerous and diverse occasions, sold its said wares and merchandise by auction, and its sales by auction have been orderly, and have not been incompatible with public health, peace, or safety; that the sales have been always and in every instance made at its permanent place of business in the said city of Tulsa.

"That said plaintiff has, in addition to the acquisition of its stock of goods, wares, and merchandise, placed in said building aforesaid valuable fixtures of a permanent nature, all to be used in the conduct of its said business, and that it has not been the intent of the plaintiff, nor is it now, to be other than a permanent resident of said city; that during the course of the conduct of the said business of said plaintiff said plaintiff has found it advantageous and remunerative to conduct its lawful business in the sale of its said wares and merchandise by auction, and it is now so engaged, and is conducting daily an auction sale.

"That plaintiff would further show that since the beginning of its business the approximate net profits of said plaintiff in its business has been $2,500, same being represented by cash and merchandise, and that the profits of the said business, according to said ratio, would not be sufficient to pay the license tax covering a like period of time as provided in said purported ordinance hereinafter specifically referred to.

"That plaintiff is informed and believes, and states the facts to be, upon such information and belief, that said citizens of said city of Tulsa more or less peculiarly interested in like business of the character of the plaintiff have become aggrieved at the auction sales as conducted by said plaintiff and others engaged in said business, and have appeared in a body before the mayor and board of commissioners of the said city of Tulsa, and have entreated, implored, and demanded of said mayor and commissioners that the said city of Tulsa pass and adopt an ordinance for said city, with no other intent on the part of the said competitors than to destroy and put out of business this plain-

tiff, and thereby prohibit this plaintiff in its legitimate exercise of its common right as a citizen of the state of Oklahoma and the United States of America; that, pursuant to the said demand of the competitors of this plaintiff and other agencies unknown to plaintiff, the said mayor and board of commissioners of the city of Tulsa did, on the 10th day of November, pass and adopt a certain purported ordinance to the said city of Tulsa known as No. 1339. * * *

"That among the provisions of said purported ordinance it is imposed upon said plaintiff, in order to carry on and conduct its legitimate business in the sale of its said wares and merchandise by auction, a requirement to pay as a license or tax the sum of $25 per day, or the sum of $7,825 per annum; that this provision is unconscionable, unjust, discriminative class legislation, and was and is intended to prohibit, and is illegal and void by reason of its unreasonable, oppressive, and prohibitory license in the form of the license or tax in the amount named, and that the enforcement of the said provision against this plaintiff would be unjust, oppressive, prohibitive, and would, in the end, become absolutely destructive of said plaintiff's business and its common right as a citizen of the United States and of the state of Oklahoma; that the enforcement of said provision, which plaintiff claims is illegal and void, would deprive said plaintiff of all its right guaranteed to it under and by virtue of the Fourteenth Amendment of the federal Constitution, at section 2 of article 11 of the Bill of Rights of the Constitution of the state of Oklahoma.

"That among certain other provisions of said purported ordinance is a provision that, should this plaintiff continue to conduct its legitimate business and the sale of its goods, wares, and merchandise by auction, and fail, neglect, or refuse to pay the license tax as aforesaid as required in said purported ordinance, the officers, agents, servants, and employes of said plaintiff would render themselves, each and every one, liable to criminal prosecution and be subject to a fine of $100 or 90 days' imprisonment, or both said fine and imprisonment, for each and every article sold at auction by plaintiff; that the profits of said business will not permit plaintiff to pay the unjust, oppressive, and unreasonable license or tax, which it says is illegal and void, as hereinbefore set out; if it continues to conduct its said business without the payment of said license or tax as aforesaid, the fine imposed upon it by failure so to pay would in the end amount to a complete destruction of plaintiff's business; that the continuance of plaintiff's legitimate business without the payment of said tax would entail many suits and prosecutions; and that the said suits and prosecutions under such illegal and void ordinance, whether successful or not on the

part of the plaintiff, would destroy the prestige, good will, and actual business.

"That under the powers delegated to the city of Tulsa under its charter as shown in paragraph 23 of section 3 of article 11 thereof, the said city has a right to tax, license, or regulate auctioneers and merchants of all kinds, but that the said city is without right to pass and adopt the said purported ordinance as aforesaid, which in effect indirectly prohibits, suppresses, and destroys auctioneers and merchants of all kinds selling goods at auction, and that by provision of the said purported ordinance said defendant city of Tulsa has in effect, under the guise of a regulation, but with the intent to do indirectly that which it is prohibited from doing directly, that is to say, it has passed and adopted said purported ordinance which will prohibit, suppress, and destroy the business of the plaintiff and the sale of its said goods, wares, and merchandise by auction; that the said ordinance was not passed and adopted for the purpose of revenue of said city because it is oppressive, unreasonable, and prohibitive, and under it the said city cannot possibly raise any revenue, but that the same was adopted, with the intent on the part of the said city to do indirectly that which it is prohibited from doing by its charter, that is to say, to suppress and prohibit sales of merchandise by auction, and was further passed and adopted for the purpose of suppressing, prohibiting, and destroying the sales of wares and merchandise by auction by this plaintiff in the city of Tulsa, and is therefore highly discriminatory, illegal, and void.

"That said defendants Frank M. Wooden, Thos. J. Quinn, and Foster N. Burns in their official capacities have threatened, and declared that they will enforce said purported ordinance, and under the said declarations of the said defendants Frank M. Wooden, Thos. J. Quinn, and Foster N. Burns, should they enforce the said ordinance and force this plaintiff to pay as a license thereunder the sum of $25 per day for each and every day it carries on its business in the sale of its said goods, wares, and merchandise by auction, or arrest, fine, and imprison its officers, agents, and employes or plaintiff, and thereby prevent them from conducting the said business, that the same will cause irreparable injury to said plaintiff, for which it has not an adequate remedy at law, and that the said defendants should be enjoined from enforcing the said purported ordinance, which is illegal and void, to prevent a multiplicity of prosecutions and suits and such consequences as would necessarily result from its enforcement, and thereby prevent the illegal exercise and abuse of said power by said city of Tulsa and to protect said plaintiff in its common rights as a citizen of the state of Oklahoma and of the United States of America."

In the court below the defendants lodged

a demurrer against the sufficiency of the petition, which was overruled by the court, and the defendants duly reserved an exception and refused to plead further, and the court rendered judgment granting a permanent injunction against the enforcement of the ordinance.

The sole question presented to this court is: Will equity interfere to prevent by injunction the enforcement of a city ordinance where it is made to appear that the ordinance is oppressive, confiscatory, illegal, and void?

In their brief the defendants assert that equity by injunction will not lie to prevent the enforcement of an illegal and void ordinance because, if the ordinance is void, the party has a plain and adequate remedy at law by way of defense to a prosecution by the city for a violation of its provisions. They rely upon the case of Golden et al. v. City of Guthrie et al., 3 Okla. 128, 41 Pac. 350, and also the case of Thompson v. E. L. Tucker et al., 15 Okla. 486, 83 Pac. 413, 6 Ann. Cas. 1012. The syllabus of the case of Golden et al. v. City of Guthrie et al., supra, says:

"(1) Injunction will not lie to restrain a city and its proper authorities from proceeding to enforce and punish, by fine and imprisonment, the violation of an ordinance which provides that, before any persons shall conduct the business of a private or public auction, or conduct the business of selling bankrupt or other stock of goods at public or private auction, such persons shall pay the sum of $5 per day to the city treasurer for each day such business is carried on, and that the violation thereof shall be considered a misdemeanor, and shall be punished by fine and imprisonment.

"(2) Such proceeding is quasi criminal in its character, and for this reason the equitable jurisdiction will not be exercised by injunction, and, in the second place, its validity may be tested by a direct appeal from the decision of the police court. If the ordinance is invalid, it will constitute no defense in an action for damages. The plaintiff in error has a plain, adequate, and complete remedy at law, and there is no ground for the interference of equity."

If the rule laid down in this case is intended to be general in its application, we would refuse to follow it, because to do so would be to fasten every ordinance enacted by city authorities upon the liberty and property rights of the people like a straitjacket, to be unloosened only by a defense as the case wends its weary way from court to court, and in the meantime the citizens must per force of law see valuable property

rights sacrificed and business interests destroyed.

Equity does not stand inactive and tolerate such injustice and wrong. To stay the hand of equity the law must not only be plain, but adequate, and in such event the law is not adequate. But we do not believe this case intended to lay down a general proposition of law applicable to all cases, but was merely announcing the law as applied by the pleadings and the evidence in that particular case.

The case of Thompson v. Tucker et al., supra, recognizes the right of equity to interfere, provided it is made to appear that not only the liberty of a citizen, but that valuable property rights, would be destroyed, and irreparable injury result, if the enforcement of the ordinance were not stayed by injunction. In the body of the opinion we find this language:

"Upon an examination of the authorities cited, it will be found that the injured party would not only have an adequate remedy at law, but the enforcement of the void ordinance would result in irreparable injury.

"We do not desire to be understood as holding that no case could be presented in which an injunction should be allowed restraining the enforcement of a void ordinance, but, as before suggested, we cannot assume in this case that the plaintiff will violate the ordinance, and that if he should that the court in which he may be tried for its violation will not hold it invalid, if that question should be raised, nor can we assume that the defendants will confiscate and destroy the property of plaintiff as alleged, for there is nothing in the ordinance complained of which would justify any such conclusion."

The demurrer in this case admits as true all of the allegations of the petition, the material parts of which, among other things, are that the plaintiff is engaged in a legal, lawful, and peaceable occupation and business, that the ordinance in question exacts a license tax of $25 per day or the sum of $7,825 per year, and that the approximate net profits to plaintiff from its business were $2,500 for a period of time of practically one year.

Under the provisions of section 1, art. 2, of the charter of the city of Tulsa, the city is powerless to impose, levy, or collect a license tax upon occupations for general revenue purposes.

Under the provision of subsection 23 of section 3 of the city charter of the city of Tulsa, it can only levy and impose a license tax upon merchant auctioneers as a police regulation. This court will look beyond the

mere title of an act to see and determine its real object and purpose and result, and where the power of taxation therein provided for is imposed as a measure for the mere purpose of revenue, its designation as a license fee or license tax will not save it from the lawful restrictions that would apply to it as an imposition of a tax, nor can this extraordinary piece of legislation be regarded as a police measure, and consequently fall within the protection of police power. While the ordinance imposes a tax of $25 per day, or the sum of $7,825 per year, it nowhere attempts to protect any public interest or to defend against any public wrong. It shows upon its face that regulation is not its purpose, but that revenue is the aim in view.

No police inspection, supervision, regulation or control is provided, nor is any standard set for the licensee to establish or that he agrees to maintain.

It seems that the payment of the money and the receipt of the license is all that is required under this act, and the licensee may pursue his business subject to no prescribed rules of conduct and under no guardian eye, and according to the unrestrained fancy of the licensee. The payment of the money and the receipt of the license is the beginning and the ending of police supervision over him or his business so for as concerns the act in question. If it is claimed that the ordinance is referable to the police power, the court must be able to see that it tends in some way towards the prevention of an offense or preservation of peace, or of the public health, or morals or safety or welfare. It must appear that some such end is the one actually intended, and that there is some connection between the provisions of the law and such purpose. If it is manifest that the ordinance has not such object, but under the guise of police regulation has provided a revenue measure, it is the duty of the courts to strike it down. Before this court would be authorized to sustain an ordinance of this character, merely as coming within the pale of police powers, it must be able to see that its object to some degree tends toward the prevention of some offense or manifest evil, or has for its aim the protection of the public health, morals, safety, or welfare, and if no such object is discernible, but under the mere guise and masquerade of public control is enacted "An Act to control," etc., an ordinance that the liberty and property rights of citizens may be invaded, the courts will and do strike down the act as unwarranted. A license fee upon occupations may be provided for under the charter of the city of Tulsa, but such license

tax should not exceed the necessary and probable expense of issuing the license and inspecting and regulating the business it covers. Cooley on Taxation (2d Ed.) p. 598; Taylor v. Pine Bluff, 34 Ark. 603.

Under the allegations of the petition, the imposition of the license provided for in this ordinance would prohibit the plaintiffs from doing business, and no ordinance which prohibits a lawful business can be upheld, whether it is for revenue or for regulation only. People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465; City of Lyons v. Cooper, 39 Kan. 324, 18 Pac. 296.

An ordinance which imposes a license tax greatly in excess of the probable amount necessary to issue the license, inspect and regulate the business, is a revenue measure, and void under the provision of a city charter, which prohibits the levying of an occupation tax for general revenue purposes.

Having reached the conclusion that the ordinance is void, the next question that presents itself for our consideration is whether or not equity by injunction will interfere to restrain its enforcement. This question was presented to this court in the case of N. Y. Life Ins. Co. v. Town of Comanche, 62 Okla. 247, 162 Pac. 466, and in that case it is said:

"Equity will restrain by injunction a proceeding under an invalid ordinance, which, if allowed to proceed, would destroy property rights and inflict irreparable injury." Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; So. Ex. Co. v. Ensley (C. C.) 116 Fed. 756; Montgomery v. L., etc., R. Co., 84 Ala. 127, 4 South. 626; Poyer v. Des Plaines, 123 Ill. 112, 13 N. E. 319, 5 Am. St. Rep. 494; Davis v. Fasig, 128 Ind. 271, 27 N. E. 726; New Port v. New Port, R., etc., Co., 90 Ky. 193, 13 S. W. 720, 8 L. R. A. 484; Davis, etc., Mfg. Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778.

It is plain from the allegations of the petition in this case that the ordinance in question, if allowed to stand, would operate to inflict irreparable injury to the property rights of the plaintiff. Every one engaged in a legal and lawful business has an inherent right to make a reasonable and legitimate profit out of it. If this ordinance were allowed to stand, not only would all of the profit derived from the plaintiff's business be consumed in the payment of the license tax imposed, but a large portion of the capital invested would likewise be drawn on to satisfy the license tax, which in the end would destroy property rights and inflict irreparable injury.

Equity by injunction will interfere to prevent the enforcement of an illegal and oppressive ordinance where it is made to appear that valuable property rights are invaded and irreparable injury will result from its enforcement.

Accordingly the judgment of the lower court is affirmed.

By the Court: It is so ordered.