## Ex parte MAYES.

No. 8951—Opinion Filed Sept. 18, 1917.

(167 Pac. 749.)

(Syllabus by the Court.)

1. **Licenses—Uniformity—Validity of Ordinance—Occupation Tax on Taxicabs.**

Amended section 22 of Ordinance 43C of the city of Pawhuska, imposing a license tax upon the business and occupation of transporting passengers for pay in automobiles or other motor-propelling vehicles upon and over the streets, alleys, and other public places of the city, and upon all those engaged in such business or occupation, and which tax is fixed at $25 per annum for each automobile operated and engaged in such business, being, as stated in the ordinance, "for the purpose of raising revenue for said city," and not an exercise of the police power, is in conflict with section 8, art. 4, c. 173, of an act of the Legislature approved March 15, 1915 (Sess. Laws 1915, pp. 328, 329), and, on account of such repugnance, cannot be enforced.

2. **Habeas Corpus — Illegal Conviction — Discharge.**

A conviction had and jail sentence imposed in default of the payment of fine assessed by the police court of the city, under the circumstances disclosed in the preceding paragraph, is without force; and one so convicted is entitled to a discharge from such illegal restraint.

3. **Licenses — Construction of Statute—Occupation Tax on Taxicabs.**

Neither section 581, Rev. Laws 1910, nor the city ordinance for the violation of which the petitioner was convicted contemplates the regulation or control of the business or traffic of transporting passengers for hire within and over the streets and public places of the city, but, on the other hand, provides for a license tax for revenue, as distinguished

from a license fee collected on account of necessary police regulation.

**4. Same.**

Under section 8, art. 4, c. 173, Sess. Laws 1915, local authorities, such as cities, may "regulate vehicles offered to the public for hire," and in doing so may impose a license or fee when the purpose thereof is an exaction of regulation. But when the primary object of the local legislation is to afford a revenue, the ordinance pursuant to which the same is levied is invalid, and cannot be enforced.

Original application of Henry Mayes for writ of habeas corpus. Petitioner discharged.

Hargis & Griffin, for petitioner.

E. L. McCain, for respondent chief of police of the city of Pawhuska.

SHARP, C. J. In the month of February, 1917, the petitioner was tried and convicted in the police court of the city of Pawhuska for the violation of an ordinance of said city providing for the levy and payment of a license tax of $25 per annum for each automobile operated for hire in said city. The power of the city to enact the ordinance under which petitioner was convicted and imprisoned is assailed upon numerous grounds, but one of which need receive our consideration. The ordinance under which the city acted and its chief of police here justifies his custody of the petitioner provides:

"That for the purpose of raising revenue for said city of Pawhuska there is hereby levied a license tax upon the business and occupation of transporting passengers for pay in taxicabs, automobiles, motor trucks, or other motor propelling vehicles upon and over the streets, alleys and other public places of the city of Pawhuska, and upon every person, firm or corporation engaged in such business or occupation. And every person, firm or corporation engaged in such business or occupation shall procure from said city a license therefor and a fee for such license shall be paid as follows, to wit: Twenty-five dollars per annum for each taxicab, automobile, motor truck or other motor propelling vehicle operated by such person, firm or corporation engaged in such business or occupation."

Another ordinance of the city provides that any one violating any of the provisions thereof shall be deemed guilty of an offense, and upon conviction thereof shall be punished by a fine not to exceed $20 and stand committed to the city jail until both fine and costs are paid, and that each day any such person or persons shall continue to operate any business therein named, in violation of the provisions of the ordinance, shall constitute a separate and distinct offense.

The power of the city to impose the tax named in the ordinance is said to be found in section 581, Rev. Laws 1910, conferring upon the city council authority to levy and collect a license tax on auctioneers, contractors, druggists, and numerous other classes of business, including drays, hacks, carriages, omnibuses, carts, wagons, and other vehicles used in the city for pay. In view of the act of the Legislature approved March 15, 1915 (chapter 173, Sess. Laws 1915, pp. 306-340), creating a department of highways and conferring upon the commissioner of highways supervision of all matters relating to state roads and highways, and of article 4 of the act providing for motor vehicle registration, and particularly on account of section 8 of article 4 of the act taking from local authorities the power to pass, enforce, or maintain any ordinance, rule, or regulation requiring from any automobile owner any tax, fee, license, or permit for the free use of the public highways, and which act provides that the local authorities in cities of the first class shall retain the power "to regulate vehicles offered to the public for hire," it is first necessary that we determine the nature and character of the tax sought to be imposed. Does the statute pursuant to which the ordinance was enacted authorize the imposition of a tax as such, or is the purpose one of regulation and control under the police power of the city? Section 581, Rev. Laws, is a revision of section 603, Statutes of 1890. The revision contains but a slight change in the original statute. It eliminates any reference to dramshops, saloons, liquor dealers, and "other gambling tables," and includes other minor changes not pertinent to the question presented. Section 603 of the Statutes of 1890 is almost identical with section 48, art. 3, c. 60, of the Laws of Kansas 1871. This statute, it was held in Fretwell v. City of Troy et al., 18 Kan. 271, was designed for purposes of revenue rather than of police regulation. In construing the statute it was observed by Mr. Justice Brewer, who delivered the opinion:

"Express authority is given by the statute to levy and collect a 'license tax' upon various exhibitions, professions, and avocations, including therein 'merchants of all kinds'; and to make more clear that it is not regulation, but revenue which is authorized, the section closes with a proviso as follows: 'Provided, however, that all scientific and literary lectures * * * shall be exempt from such taxation.'"

The question was again presented to the Supreme Court of that state in City of Newton et al. v. Atchison et al., 31 Kan. 151, 1 Pac. 288, 47 Am. Rep. 486, and arose under section 3 of chapter 40 of the Laws of 1881,

and which was substantially the same as the 1871 statutes before the court in Fretwell v. City of Troy et al. The latter statute, however, eliminated the proviso found in the earlier statute respecting the exemption from taxation of all scientific and literary lectures, and also gave to the city the "exclusive" authority to levy and collect a license tax. The court was asked to re-examine its former opinion, and (we may assume) to recede from its earlier conclusions respecting the construction of the statute. It declined to do so, but, on the other hand, gave additional reasons why the statute should be held to impose a tax.

"We think," said the court in the latter opinion, "our former opinion correct, and that there are additional reasons why the same construction shoud be given to the section now in question. The language of the section seems plain. It reads, 'The city council shall have exclusive authority to levy and collect a license tax on auctioneers,' etc. We cannot see how language can be plainer. Every part of the sentence points toward this power. The verbs used are 'levy and collect,' words generally used in reference to taxes, and not very apt in respect to mere licenses. The city is authorized to levy and collect a license tax. The principal word here is 'tax,' and the term 'license' simply qualifies and describes it. Where nothing but license is contemplated, the language ordinarily is direct, and grants power 'to license,' or 'to license and regulate,' or 'to adopt rules and regulations for licensing.'"

Attention was called to the fact that in the former opinion the court had construed the words "levy and collect a license tax," and it was said that, with that construction before them, the Legislature in 1881 enacted section 3 of the 1881 statute, containing these words; that in doing so, knowing the construction which had been given them, the Legislature, by using them, intended to grant to the city the power to levy and collect license taxes. These opinions are entitled to great weight, not only on account of the eminent jurist who delivered them, but for the reason that they involve a construction both of the act under consideration, and a very similar one, of the state from which they were adopted.

The power to license and regulate particular branches of business or matters is usually a police power; but when license fees or exactions are plainly imposed for the sole or main purpose of revenue, they are, in effect, taxes. Ordinarily the mere power to license, or to subject to police regulations, does not give the power to tax distinctly for revenue purposes; but it may give the power when such appears from the nature of the subject-matter, and upon the whole charter or enactment, to have been the legislative intent, but not otherwise. Dillon's Municipal Corporations, sec. 768. The statute does not purport to have in mind a regulation. It imposes no conditions and contains no restrictions for the carrying on of the business; neither does it attempt to regulate or control those lawfully engaging in the business. Its primary, and indeed only, purpose is to authorize the collection of a tax. The statute furnishes only a convenient mode of imposing taxes on the business of the several descriptions and ascertaining from whom such taxes are to be collected, as was said to be the case in Royall v. State of Virginia, 116 U. S. 572, 6 Sup. Ct. 510, 29 L. Ed. 735. There, discussing the question of license taxes generally, it is said:

"That the party complying with the statutory conditions is entitled as of right to the license is conclusive that the payment is a tax laid for revenue, and not an exaction for purposes of regulation. Mayor, etc., v. Second Ave. R. R. Co., 32 N. Y. 261; State v. Hoboken, 33 N. J. Law, 280; 2 Dill. Mun. Corp. 766, c. 19, sec. 768. The occupation, which is the subject of the license, is lawful in itself, and is only prohibited for the purpose of the license; that is to say, prohibited in order to compel the taking out a license, and the license is required only as a convenient method of assessing and collecting the tax. Cooley, Tax. 407. Such license fee was held to be a tax by this court in the cases of Brown v. Maryland, 12 Wheat. (25 U. S.) 419, bk. 6 L. Ed. 677, Ward v. Maryland, 12 Wall. (79 U. S.) 418, bk. 20 L. Ed. 499, and Welton v. Missouri, 91 U. S. 275, bk. 23 L. Ed. 347."

Government should have for its end the welfare, convenience, and advantage of its citizens, and the advancement of their material, intellectual, and moral interests. One of its important obligations, if not its most important, is the protection of life and limb and the property and goods morals of the public. That particular and inherent power of the state which has for its purpose the accomplishment of these results is known as the police power. It includes and comprehends within its exercise all those general laws and internal regulations which are necessary to secure the peace, good order, health, and comfort of society. Gibbons v. Ogden, 9 Wheat. 202, 6 L. Ed. 23; Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394; Munn v. People of Illinois, 94 U. S. 113, 24 L. Ed. 77. Broadly speaking, it may be said that the state through the exercise of its police power has the right to control and regulate the conduct of the citizens and the use of their property so long as such regulation and control has for its purpose and aim the protection and care of life and property.

As members of society the citizens of the state or community owe to their neighbors, and to all who may be interested or affected, the use of their property, and the exercise of what might be considered otherwise as natural and inalienable rights, in such a manner as not to injure or interfere with either their rights or their property. The state has the power as a means to an end, namely, the better exercise of the police power, to impose a fee or license upon property used in a certain manner or upon certain callings or occupations. Ordinarily the state has no right under this power to impose license fees for purposes of revenue without regard to the question of the regulation, control, or use of such property or occupation. The imposition of license fees, having for their purpose the better regulation and control of such occupations, or the use of certain property, is valid as coming within the proper exercise of the police power when they are imposed not for the purpose of obtaining a revenue but for the ostensible one. As concrete illustrations of the valid imposition of license fees, we find, upon an examination of the authorities, that ordinances or regulations have been held valid licensing vehicles, those engaged in certain occupations, hackmen, draymen, expressmen, and others engaged in carrying passengers, baggage, or freight. If the charge for such license or permit is greater than necessary to cover the cost of regulation or inspection, such charge will undoubtedly be held unreasonable, and the ordinance imposing the same invalid, upon the theory that the police power cannot be invoked or exercised as a general means of raising revenue. Abbott on Municipal Corporations, sec. 132. The police power is that power of the state more than all others which affects most intimately the private and personal interests and relations of each individual. As stated in Noble State Bank v. Haskell et al., 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, it extends to all the great public needs, and may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Applying the rule to the present case and giving to the statute the broadest interpretation to which it is susceptible, non constat that the tax is one arising under the police power, but is for the purpose of raising a revenue. It does not contemplate an intention to regulate, control, or supervise; it includes for the purpose of taxation all those engaged in the trades and vocations named and includes bankers, lumber dealers, furniture dealers, real estate agents, merchants of all kinds, as well as those classes of business in the carrying on of which police control is commonly exercised. Section 583 and succeeding sections of article 11, Rev. Laws 1910, contain numerous grants of powers to cities to regulate, restrain, prohibit, or suppress various practices and kinds of business of such character as may injuriously affect the public interest or lead to disorder or increased necessity for police supervision. But it is not claimed the power of the city falls within or is derived from any of these provisions; indeed, counsel for respondent concede that the object of the ordinance was to collect a license tax for revenue purposes. This, as to vehicles included in the highway act, could not be done. The power to otherwise enforce authority exercised by virtue of the grant, and of legislation enacted pursuant thereto, not being involved, is not considered.

Turning to the ordinance under which the petitioner was convicted, it is plainly stated that its purpose was that of raising revenue for the city of Pawhuska. That the tax in question is levied upon the business or occupation, when raised solely for the purpose of revenue, does not make it any the less a revenue measure. As we have seen with respect to the statute, so the ordinance also is totally wanting in those characteristics that go to show an intention to control, prohibit, or supervise under the police power of the city.

May such a tax longer be imposed in view of section 8, art. 4, of the highway act? We think not, for the reason that section 8 forbids the city to pass, enforce, or maintain any ordinance requiring from the owner of an automobile a tax, fee, license, or permit for the free use of the public highways, and makes any ordinance, rule, or regulation contrary to or inconsistent with the provisions of the article of which it forms a part, without force or effect. There are certain enumerated exceptions to the section, and all of which, we think, contemplate regulation and control of motor vehicles; the one applicable here being that "the powers given to local authorities to regulate vehicles offered to the public for hire * * * shall remain in full force and effect." Other provisions are that the local authorities may set aside grounds for speed contests or races to be given under proper restriction for the safety of the public; to enact rules and regulations applicable equally to all vehicles and users of the highway to bring about the orderly passage of vehicles upon designated streets, where the travel is heavy and continuous; to exclude or regulate motor trucks and motor

vehicles used exclusively for commercial purposes, from the parks and parkways of the city; to exclude motor vehicles from any cemetery or grounds used for the burial of the dead; another that authorities in cities and towns may regulate the speed of motor vehicles. These call for the exercise of the police power as distinguished from the power to tax for revenue purposes. They contemplate control, regulation, supervision, and exclusion. It is this power that may properly be exercised by the local authorities, and not the power to levy and collect a tax for revenue alone. As bearing upon the question at hand, see Ex parte Shaw, 53 Okla. 654, 157 Pac. 900, where the charter of the city of Tulsa granted the power "to regulate the use of automobiles * * * and speed thereof, * * * to issue permits for the use of such vehicles and to require the numbering of said vehicles."

The purpose of the highway act, or at least one purpose, is to take from the municipal authorities the power to levy and collect a tax for the free use of the public highways, and that whether the tax be levied upon the vehicle, upon the owner, or upon the occupation in which he is engaged. The power to regulate and control, though in the form of a tax, and where the revenue to be collected is incidental to the regulation, is recognized as an existing right of the local authorities. This, we think, is clear. As the ordinance under which petitioner was authorized to engage in the business of transporting passengers for hire, and the statute under which the power to impose such taxes is delegated, do not contemplate an exercise of the police power and of the rights of taxation incidental thereto, but a tax upon the business for revenue only, it follows that the judgment of conviction for violation of the ordinance is a nullity, and that the petitioner should be discharged, which is accordingly ordered.

All the Justices concur, except OWEN, J., absent and not participating.