## Ex parte DICKISON.

No. 18510. Opinion Filed Sept. 18, 1928.

Rehearing Denied Oct. 1, 1929.

P: E. Gumm, for petitioner.

Malcolm W. McKenzie and Bliss Kelly, for respondent.

RILEY, J. Lou Dickison, petitioner, was restrained of his liberty by M. C. Binion, chief of police of Oklahoma City, because of nonpayment of a fine and cost assessed against him in the municipal court of Oklahoma City, based upon violation of Ordinance 2740, as amended by ordinance 3057, of said city.

Section 1 of ordinance 2740 reads as follows:

"There is hereby levied a license tax on the callings, trades, businesses, avocations and occupations hereinafter named, in the following sums respectively set opposite the name of such calling, trade, business, avocation or occupation, to wit: * * * Huckster 6 mo., $30.00."

Section 2 defines the terms "hawking," "peddling," and "canvassing."

Section 3 provides a penalty for every person "violating any provision of this ordinance," and fixes the amount of the fine or imprisonment to be assessed upon conviction.

Section 4 fixes the emergency clause.

Ordinance 3057 amends section 3 of ordinance 2740 by omission of reference to imprisonment and by limiting the amount of cost to be assessed to $1.

Petitioner bases his petition upon three grounds as follows:

First, because he has been unfairly and unreasonably discriminated against by the state and by Oklahoma City allowing certain rights and privileges to needy or disabled ex-service persons and the widows of ex-service persons contrary to the provisions of section 51, art. 5, of the Constitution of Oklahoma, and section 7, art. 2, of the Bill of Rights, and section 1 of 14th Amendment to the Constitution of the United States.

Second, because the legislative body of the city had no authority to enact said ordinance No. 2740 and ordinance No. 3070; and

Third, because the said ordinance No. 2740 does not provide or make it unlawful to engage in the occupation of a huckster without paying the tax or obtaining a license.

We consider the second ground for the obvious reason that unless there existed authority for the enactment of the ordinances our labors are at an end. We hold that the ordinances presented are revenue-raising measures as distinguished from regulatory enactments under police power, for no word or phrase of the measure attempts to regulate or control, whereas the sum assessed for the license discloses the purpose to be for revenue. Ex parte Mayes, 64 Okla. 260,

167 Pac. 749; Royal v. State of Va., 116 U. S. 572, 6 S. Ct. 510, 29 L. Ed. 735.

In the latter case it was said:

"That the party complying with the statutory conditions is entitled as of right to the license is conclusive that the payment is a tax laid for revenue, and not an exaction for purposes of regulation. * * * The occupation, which is the subject of the license, is lawful in itself, and is only prohibited for the purpose of the license; that is to say, prohibited in order to compel the taking out a license, and the license is required only as a convenient method of assessing and collecting the tax."

Section 4556, C. O. S. 1921, was construed in Ex parte Mayes, supra.

"Neither section 581, R. L. 1910, nor the city ordinance for the violation of which the petitioner was convicted, contemplates the regulation or control of the business or traffic of transporting passengers for hire within and over the streets and public places of the city, but, on the other hand, provide for a license tax for revenue, as distinguished from a license fee collected on account of necessary regulation."

It is probable that, in the absence of any grant of power from the sovereignty, the city would have authority under police power to enact regulatory ordinances, restricted as it would be, as to the amount of license fee to be charged, to the cost of issuance and regulation. Ex parte Simmons, 5 Okla. Cr. 399; 115 Pac. 380; State v. City of Billings (Mont.) 255 Pac. 11; Ex parte Bachman, 20 Okla. 78, 201 Pac. 537. But the ordinances under consideration, as we analyze them, are not regulatory, but for revenue. From whence comes the authority for such enactments? The answer is, from section 4556, C. O. S. 1921, wherein express authority is given by the statute "to levy and collect a license tax upon various exhibitions, professions and avocations, including therein merchants of all kinds," and to make more certain that it is not regulation but revenue which is authorized, the section closes with a proviso as follows: "Provided, however, that all scientific and literary lectures * * * shall be exempt from such taxation." Ex parte Mayes, supra.

Such was the construction placed upon the statute prior to its adoption by the state from whence it came. Fretwell v. City of Troy, 18 Kan. 271. It is presumed that the statute was adopted in view of the construction theretofore placed upon it. City of Lyons v. Cooper, (Kan.) 18 Pac. 296.

Therefore, we hold that the enactments un-

der consideration were within the power and authority of the city by virtue of the grant of power. Moreover, the act, section 4556, supra, was within the discretion of the Legislature, for by section 20, art. 10 (Wms. 285), Const. of Oklahoma, it is provided:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, **but may, by general law, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes.**" West v. City of Mt. Sterling (Ky.) 65 S. W. 120; City of Carlisle v. Heckinger & Co., 103 Ky. 381, 45 S. W. 358.

Section 4556, supra, in fact, was a general law conferring authority such as was exercised by enactment of the ordinances here considered.

We may consider some expressions of this court upon this subject-matter.

City of Tulsa v. Metropolitan Jewelry Co., 74 Okla. 107, 176 Pac. 956. That cause turned upon the provision of the city charter which prohibited the levying of an occupational tax for general revenue purposes.

Mitchell v. City of Lawton, 124 Okla. 60, 253 Pac. 999, expressly holds that the city "had the power to levy and collect a license tax on auctioneers for the purpose of revenue (section 4556, C. O. S. 1921). It also had authority to levy a license tax for the purpose of regulating the business of auctioneering as an exercise of the police power." That opinion held the ordinance to be "a police regulation and not a revenue measure." And being merely regulatory, "the license fee charged must not exceed the expense of issuing the license and regulating the business." Since the ordinance there considered did exceed such cost, it was held void. The writer did not concur in that opinion, for the reason that it seemed illogical to strike down the ordinance for being revenue raising when authority to enact such measures existed, even though the measure be considered regulatory as authorized under the police power. Is there any reason why the ordinance could not be conceived by a union of police power and specifically granted revenue powers, and live as a revenue raising as well as a regulatory enactment?

Gundling v. Chicago, 177 U. S. 183, 44 L. Ed. 725, 37 C. J. 168, holds in the affirmative where it says:

"The amount of the fee is fixed by the common council for the privilege of doing business, and the text of the ordinance and

268

the amount of the fee therein named would seem to indicate that it is both a means adopted for the easier regulation of the business and a tax in the nature of an excise imposed upon the privilege of doing it. In either case the state has power to make the exaction, and its exercise by the city under state authority violates no provision of the federal Constitution."

There the contention was that the ordinance was void as being an unreasonable exercise of police power by imposing a license fee of $100, a sum greater than the expense of issuing the license and providing the regulation. The text of that ordinance showed it to be regulatory, while the amount charged manifestly stamped it as a revenue raising measure. The Supreme Court of Illinois and the Supreme Court of the United States held, in effect, that such an ordinance may be "hybrid" in purpose and application.

One ground for striking down such an ordinance is that the amount charged is so large as to be unreasonable and oppressive; that the special tax imposed destroys a business or vocation lawful in itself. The lack of reasonableness of the demand for a license provided for the pursuit of a lawful vocation will be heard by the courts. Fretwell v. City of Troy, supra. Such ground is not asserted in the case at bar.

It is presumed that the city enacted the revenue raising ordinance in view of the express grant of power.

In Muskogee v. Wilkins, 73 Okla. 192, 175 Pac. 497, this court held:

"Section 581, R. L. 1910, empowered municipal authorities to impose a license tax for revenue as distinguished from a license fee collected on account of necessary police regulation."

We, therefore, hold that under the express grant of power, section 4556, supra, the legislative body of the city of Oklahoma City had authority to enact ordinance No. 2740 and ordinance No. 3057.

We now consider the first contention, which is based on the theory that in the application of the ordinances certain ex-service persons were granted such licenses and privileges without payment of a fee; that such concessions were in view of the statute of the state, in the light of which the ordinances must be construed; that such exemptions were unconstitutional, being violative of section 51, article 5, and section 7, art. 2, Bill of Rights, Constitution of Oklahoma, and section 1 of the 14th Amendment to the Constitution of the United States.

It is agreed that there has been issued to 16 persons licenses to hawk and peddle without the payment of the fee required by the enactments, and it is asserted and it seems to be agreed that such issuance was made under ordinance No. 742 of said city, which provides as follows:

"Old soldiers, ex-Union or ex-Confederate, upon complying with the provisions of House Bill No. 80, Session Laws of 1911, page 217, and presenting the evidence thereof to the city clerk, shall be granted a free license to transact such business as are named in said statute, provided that it shall be unlawful for any such old soldier to carry on any such business until such free license is procured, as herein provided"

—and in view of the state law, chapter 75, S. L. 1927, amendatory of chapter 136, S. L. 1923, which statute provides in substance that certain ex-service persons shall be exempt from the payment of license tax for hawking and peddling upon obtaining a certificate from the county judge that such person is needy and disabled.

Section 8820, C. O. S. 1921, was a similar enactment by the Legislature, in reference to ex-service men. Yet neither in section 8820, nor in chapter 136, S. L. 1923, nor in chapter 75, S. L. 1927, is reference made to section 4556, C. O. S. 1921, or section 581, R. L. 1910.

The petitioner contends and the respondent admits that exemptions expressed in section 8820, chapter 136, S. L. 1923, and chapter 75, S. L. 1927, are unconstitutional and void as being discriminatory and an unreasonable classification of persons similarly situated, and both parties assert that by the weight of authority, enactments of this character have been held to be void by various courts of other states, and cite: City of Laurens v. Anderson, 75 S. C. 65, 55 S. E. 136; State v. Garbroski (Iowa) 82 N. W. 959; State v. Shedroi (Vt.) 54 Atl. 1081; Adams v. Standard Oil Co. (Miss.) 53 So. 692.

Since the parties have agreed as to the unconstitutionality of the exemption statute, we see no purpose to be served in passing upon the matter, although we observe that in Maine and Georgia (State v. Montgomery [Me.] 43 Atl. 13, and Coxwell v. Goddard [Ga.] 46 S. E. 412) such exemption statutes were upheld on the ground of public policy. We shall treat the exemption statutes, merely for the purposes of this case, as void and unenforceable.

Respondents, however, contend that the

exemption enactments, supra, were void ad initio and therefore had no effect either directly or indirectly upon any previous enactment authorizing the levy of the tax.

By virtue of the constitutional provision heretofore set out, the Legislature had the right by general law to permit the levying of such special taxes by municipalities. The Legislature exercised that right. Section 581, R. L. 1910. In fact the authority was being exercised by municipalities prior to the adoption of the Constitution, under the provisions of enactments of the Legislature in year 1890. From the year 1890 until March 16, 1911, throughout the 20-year period, the provisions contained in section 4556, supra, were in full force and effect, which fact evidenced the intent of the Legislature to permit the taxing of hawkers and peddlers. The Legislature has ever possessed the power to withdraw such authority, and, as applied to the taxing of vehicles for hire by municipalities, the Legislature did in 1915 withdraw such grant of power. Ex parte Mayes, supra.

The question now to be determined is whether by the attempted enactment of exemption statutes the Legislature amended by implication, section 4556, supra, so as to render void the latter section. The petitioner urges that what may be termed the taxing statute and the exemption statutes must be construed in pari materia, and, so construing them, the exemption feature is void because the provision of article 5, section 51, is that "The Legislature shall pass no law granting to any association, corporation, or individual, any exclusive right, privilege or immunities within this state." And that, since the Legislature clearly evidenced the intent to exempt persons from the operation of the tax, and courts cannot reasonably say the Legislature would have enacted the tax statute had it known that it was bound to tax alike all or none of its citizens similarly situated.

We would follow such reasoning had the tax statute and the exemption statute been enacted as a whole, but the first exemption statute did not come into existence until the year 1911, and then without being amendatory on its face as to the tax statute.

The courts do not favor repeals by implication. Why, then, should we favor an amendment by implication, which is void ab initio, which in effect works a repeal in its application? The exemption statutes were in fact nothing. The attempt to so legislate was a futile gesture and the passage of the exemption statutes did not affect the provisions of the general law previously enacted and in force, in view of the fact that the exemption statutes did not refer to section 581, R. L. 1910, as existing, for, had the Legislature intended to withdraw from municipalities the right to tax specially, it seems some reference would have been made in the subsequent enactments. Had the Legislature known enactments such as that of 1927 were void, it would not have enacted them. But there the presumption stops. Such an abortive act of the Legislature attempting to create exceptions to a general law without reference to the general law will not be considered as a withdrawal of power extended by the general law, but each enactment will be considered separately, thus permitting the consideration of the latter enactment as invalid without impairment of the former. Postolwait v. State, 28 Okla. Cr. 17, 228 Pac. 789; Dees v. Bk. of Commerce, 100 Okla. 205, 229 Pac. 474; Wood & Co. v. Russell, 102 Okla. 92, 226 Pac. 1040.

The latter case holds:

"The fact that the license tax law has been held invalid as to certain foreign corporations which were granted authority to do business in the Indian Territory, prior to statehood, and continued to do business in the state after the enactment of the license tax of 1910, does not render the statute invalid as to the license tax on domestic corporations."

It is next contended that the manner of enforcement of the ordinance, although the same be considered valid on their face, was and is so discriminatory and unreasonable, by reason of the issuance of license to certain individuals without payment of the fee, that petitioner has been denied equal protection of the law. Yick Wo v. Hopkins, 118 U. S. 356, is relied upon.

The case of Tulsa v. Thomas, 89 Okla. 188, 214 Pac. 1070, follows the rule in the famous Yick Wo opinion, in which it was held that, although an ordinance be fair on its face, its enforcement might be in such an unreasonable and discriminatory manner as to warrant injunction as to the manner of enforcement.

But petitioner does not come within the doctrine announced in the Yick Wo Case. This ordinance is not a regulatory one, but a revenue measure. All that is required of one who seeks a license is the payment of the tax fee. There is neither discretion nor "naked and arbitrary power to give or withhold consent * * * as to places * * * as to persons." Moreover, the respondent asserts

that since July 8, 1927, and following a decision of the district court of Oklahoma county in this matter, denying a writ of habeas corpus and holding exemption statutes to be void, no further licenses are shown to have been issued by the city clerk without payment of the fee, and therefore no grounds exist for equitable relief from the manner of enforcement of the ordinance. With considerable reason it is asserted that the city followed the state law as to exemption although such exemptions were not contained in the ordinances here set out, presuming them to be valid and constitutional until the courts gave contrary expression, whereupon the city conformed to the situation, eliminating any alleged discrimination whatsoever.

We cannot say there existed a sufficient discrimination in the enforcement of the taxing ordinance to warrant our cognizance of the manner of enforcement even in an application for injunctive relief, to say nothing of proceeding by habeas corpus.

The writ is denied.

BRANSON, C. J., and HUNT, CLARK, and HEFNER, JJ., concur. MASON, V. C. J., and LESTER, J., dissent.