## OKLAHOMA CITY et al. v. GRIGSBY.

No. 25802.    Jan. 29, 1935.

Rehearing Denied March 5, 1935.

Harlan Deupree, Municipal Counselor, and A. P. Van Meter, Asst. Municipal Counselor, for plaintiffs in error.

Lillard, Gibbons & Jennings, for defendant in error.

WELCH, J. This is an appeal from the district court of Oklahoma county. Plaintiffs in error, city of Oklahoma City, a municipal corporation, O. M. Mosier, city manager of said city, and John Watt, chief of police of said city, were defendants in the lower court, and defendant in error, H. E. Grigsby, was plaintiff below. The parties will herein be referred to as plaintiff and defendants, as they appeared in the trial court.

The district court, upon application of plaintiff, who owned and operated a restaurant in Oklahoma City, wherein he dispensed 3.2% beer, restrained the city and the designated officers thereof from enforcing a city ordinance in so far as concerned the collection of an annual license fee of $15 from the plaintiff as a dispenser of such beer.

That judgment is attacked here, and the question necessary for our determination is whether or not chapter 204, S. L. 1933 (Sp. Sess.), prohibited or excluded the defendants from charging a license fee as a prerequisite to plaintiff's right to dispense such beer within the limits of such city.

Plaintiff contends that section 11 of chapter 204, S. L. 1933 (Sp. Sess.), prohibits the levying of any tax or license fee by the city. Such section provides as follows:

"The tax imposed by any law of the state on nonintoxicating beverages, as defined herein, shall be exclusive of any tax, license fee or charge upon the sale, distribution, possession or handling of such nonintoxicating beverages; and is exempt from the terms of any general sales tax now in force or which may hereafter be adopted."

On this question the defendants maintain that such section is void under section 57, article 5, of the Constitution, in that section 11 of the 1933 Act is not related to the subject-matter as expressed in the title of the act. They say, further, that section 11 of the act was not intended for the purpose as applied by the trial court.

We quote the title of the act as follows:

"An Act providing for the enforcement of the laws of the state imposing license fees and taxes upon nonintoxicating beverages containing more than one-half of one per centum of alcohol, by volume, and not more than three and two-tenths per centum of alcohol, by weight; defining terms; providing the manner of issuing licenses to wholesalers and retail dealers; providing that taxes shall be paid by wholesalers; and by retail dealers in certain cases; providing for distribution under the terms and provisions of House Bill No. 647, Regular Session of the Fourteenth

Legislature, for use by school districts immediately upon receipt thereof; prescribing the conditions under which sales of beverages, as herein defined, may be made and the taxes thereon may be paid: providing how such taxes may be paid and for reports and returns thereof; providing for reports by manufacturers, wholesale and retail dealers; prescribing penalties for failure to pay taxes; for failure to make returns and reports and for the violation of laws and the rules and regulations of the Oklahoma Tax Commission; providing that such nonintoxicating beverages possessed, offered for sale, sold or transported, in violation of law, shall be subject to confiscation and destruction, and that motor vehicles transporting such beverages, in violation of law, shall be subject to confiscation and sale, and defining the procedure therefor, and defining the duties of county attorneys and the Oklahoma Tax Commission in connection therewith; requiring bonds for wholesalers and retail dealers, providing the amounts thereof and defining the sureties and securities that may be accepted, and providing for review of the action of the Commission thereon; providing for liens upon taxpayers' property and for tax warrants; providing how such beverages may be transported; providing for the revocation of licenses; providing for injunctions; providing for remedy by suit against taxpayers; providing a legal remedy for aggrieved taxpayers; prescribing the manner in which such beverages shall be labeled and prohibiting the use of any substitute therefor; providing that the provisions of this act shall be severable, that its provisions shall not be a burden upon interstate commerce, and declaring an emergency."

The constitutional provision relied upon provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. * * *" Art. 5, sec. 57.

In considering the question of the sufficiency of the title of the act, we observe the language of this court in the case of In re County Com'rs of Counties Comprising Seventh Judicial Dist., 22 Okla. 435, 98 P. 557, wherein the court in discussing this same provision of our Constitution said:

"The other abuse against which this provision was levied was to prevent matters foreign to the main objects of a bill from finding their way into such enactment surreptitiously. Substantially such a provision is found in many of the state Constitutions, and, as is usual in such cases, judges have differed in their interpretation of the same. The best-considered cases, however, appear to have established the following propositions: That the clause is mandatory; that its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation; that the title of a bill may be very general, and need not contain an abstract of the contents of the bill, or specify every clause therein, it being sufficient if they are all referable and cognate to the subject expressed. Everything which is necessary to make a complete enactment, or to result as a complement of the thought therein contained is included in and authorized by such title expressed in general terms."

The defendants argue that the city ordinance involved in this cause is purely regulatory, and is well within the police power of the city as granted by its charter, the state laws of the state, and the state Constitution, and that nowhere in the title of the bill is to be found anything to indicate that the Legislature intended by the bill to withdraw such power or abridge the same.

We have carefully examined the above-quoted title of the act, and conclude that the subject and purpose of the act is clearly stated therein, to wit: To provide for and regulate the possession, transportation and sale of 3.2% beer, and the licensing thereof, as a nonintoxicating beverage.

If the title to the bill indicates that the Legislature therein is providing for the issuing of licenses and the payment of the fees thereof, it would appear that a provision in the bill providing that no other fees or taxes shall be charged therefor is clearly related to the subject-matter as expressed in the title. The Legislature had the unquestioned right to provide for the issuing of licenses and the charging of a fee for dispensing the beer, and the title to the act clearly discloses that to be the subject of legislation. Having such right, it also had the right to provide that such fees or charges should not be made by other governing bodies of the state, and an exclusion of such other governing bodies to levy any further fees or charges for the same rights and privileges is cognate and directly associated with such subject-matter of the act.

We are of the opinion that the object of the constitutional provision here considered is fully satisfied in the instant case, for the reason that it appears that no one could have or should have been misled by the title of the act under consideration. By that title the persons entitled to the notice afforded thereby were apprised of the intention of the Legislature to legislate regarding licensing dispensers of beer, and

having been so notified, it is easy to assume that they might have expected the Legislature to have excluded all others than those named from issuing the licenses or charging a fee therefor.

We have examined Johnson v. Grady County, 50 Okla. 188, 150 P. 497; Holcomb v. C., R. I. & P. Ry. Co., 27 Okla. 667, 112 P. 1023; State v. Johnson, 90 Okla. 21, 215 P. 945; Casner v Meriwether, 152 Okla. 246, 4 P. (2d) 19; Board of County Commissioners v. Giddings, 159 Okla. 103, 14 P. (2d) 418; Pitts v. Allen, 138 Okla. 295, 281 P. 126; Gilmer v. Hunt, 167 Okla. 175, 29 P. (2d) 59, and State ex rel. Board of Education of the City of Tulsa v. Morley, 168 Okla. 259, 34 P. (2d) 258, which are the cases cited by the defendants, and upon which their contention on this question is principally based. We find nothing in those cases contrary to our conclusion here. It would appear every case of this nature must be decided in accordance with the interpretation placed upon the title by the court in each particular case, and through all of the cases heretofore decided we find the court adhering to the rule disclosed by the above-quoted excerpt from In re County Com'rs of Counties Comprising Seventh Judicial Dist., supra.

With reference to the defendants' contention that section 11 of the legislative act under consideration was not intended to prohibit the defendant city from charging a license fee, we are forced to the conclusion that the language therein contained was there employed for that purpose, and with that intention, or that it is wholly without any intelligent meaning.

It is suggested that had other language been employed by the Legislature in section 11, that section might have more clearly and forcefully expressed the legislative intent. With that suggestion we are inclined to agree, but we must consider and construe that section and the act as it stands.

It is the duty of the courts to ascertain from the language employed in the statutory enactment, the true intent of the Legislature, and the purpose of the legislative act will never be thwarted if such purpose can be ascertained.

The defendants suggest that the section means that when an owner of the beer has paid the license fee and taxes imposed by chapter 153, S. L. 1933, and chapter 204, S. L. 1933 (Sp. Sess.), the beverage itself will not be subject to the payment of ad valorem tax, nor the sale thereof subject to the sales tax provided by state laws.

The defendants suggest that section 11, under consideration, means this and nothing more. We must reject that reasoning as unsound. While we agree with this suggestion in part, we cannot follow it to its final conclusion.

The material statement of section 11 of the act is as follows:

"The tax imposed by any law of the state on nonintoxicating beverages, as defined herein shall be exclusive of any tax, license fee or charge upon the sale, distribution, possession or handling of such nonintoxicating beverages."

The opening statement, "The tax imposed by any law of the state," includes all taxes that are levied or imposed by state law. And this section, in substance, provides that such taxes as are imposed by state laws shall be exclusive of any tax on the sale, distribution, or possession of the beverage. Obviously it was the legislative intent that such taxes as are imposed by state laws shall be exclusive of any other tax on the sale, distribution, or possession of the beverage. While that word "other" is not included in the act as used in the preceding sentence, yet the same meaning is expressed in the act. The word "exclusive," as used in the language of section 11 of the act, must necessarily have referred to a tax, license fee, or charge sought to be levied or imposed by some other agency than by a state law.

To give to this provision the meaning argued for by defendants would be to hold that it means, in substance, that any or all taxes that might be imposed by state laws would be exclusive of all other taxes, license fees, or charges imposed by state law. That would be a most strained construction, and would render that provision of the section wholly without meaning.

In Protest of Chicago, R. I. & P. Ry. Co., 137 Okla. 186, 279 P. 319, this court held:

"It is a cardinal rule that, in the construction of statutes, the legislative intent must govern, and to arrive at the legislative intent the entire act must be considered, together with all other enactments upon the same subject, and, when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied, to give the statute the force and effect which the Legislature intended."

And in State ex rel. Board of Education of City of Tulsa v. Morley et al., 168 Okla. 259, 34 P. (2d) 258, this court held:

"A statute should be given construction which renders every word operative rather than one which renders some words idle and nugatory.

"The presumption is that the Legislature expressed its intent in a statute and that it intended what it expressed.

"When the meaning of a portion of the body of a legislative act is uncertain, it is proper to consider the title of the act to determine the legislative intent, in this jurisdiction where the Constitution requires that the purpose of an act be clearly expressed in its title. Section 57, art. 5, Const. Okla."

We conclude that the Legislature, in employing the language used, could have had no other interest or purpose than to provide that the taxes, license fees, or charges levied by state law shall be exclusive of or in lieu of any other tax, license fee, or charge, by any other governmental agency or municipality of the state. It follows from that conclusion that the act operates to deprive the city of the right to impose a tax, license fee, or charge upon the sale of the beverage.

The city ordinance, in addition to the license fee provision, contained various regulatory provisions. There is no question as to the general authority of the city to reasonably and properly regulate the conduct of various kinds of business, and various kinds of business establishments in the city. That is conceded in plaintiff's brief. The trial court only restrained the city from enforcing the ordinance in so far as concerned the collection of the annual license fee or charge. That judgment was correct, but in affirming it we do not limit or restrict the city in the proper use or application of its regulatory powers.

Other questions are discussed by the parties, but in view of our conclusion, it becomes unnecessary to consider them here. The judgment of the district court is affirmed.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. OSBORN, V. C. J., dissents.

----

OSBORN, V. C. J. (dissenting). I agree with my associates that the city is vested with authority to regulate the business of selling beer, but I cannot agree that section 11, chapter 204, S. L. 1933, (Sp. Sess.), (House Bill No. 28), operates to prohibit the city from charging a fee for a permit for the operation of such business within the city limits so long as the fee for such permit does not exceed the actual cost of issuing the license, inspecting and regulating the business.

Ordinance No. 4485 of the city of Oklahoma City prohibits the sale or distribution of any nonintoxicating alcoholic beverages within the city of Oklahoma City without a license issued by the city clerk; provides for a regulation and inspection fee of $15 per year for each place of business where such alcoholic beverages are sold or distributed for consumption on the premises, and a fee of $10 per year for each place of business where said beverages are sold in the original container and not for consumption on the premises; it further prohibits the adding of alcohol to any nonintoxicating alcoholic beverages for the purpose of raising the alcoholic content above 3.2 per centum; prohibits the sale of beverages containing more than 3.2 per centum of alcohol; prohibits the permission of any violation of the prohibitory law on the premises of the licensee; prohibits the sale of any nonintoxicating alcoholic beverages to a minor under the age of 21 years; prohibits the placing of any colored glass, curtain, screens, or partitions on outside windows or doors on any place where such beverages are sold or distributed so as to exclude the public gaze therefrom; prohibits the use of the word "saloon" in any sign or advertisement concerning the sale of such beverage; requires that the premises shall be kept in a clean and sanitary condition and provides for the sterilization of all receptacles used for the serving of such beverages; provides that all persons handling such beverages shall procure a health certificate from a licensed physician at least twice a year showing that they are free from infectious or contagious diseases; provides that any officer acting in pursuance of the authority granted by the ordinance shall have authority to enter and inspect any place where such beverages are sold or distributed, and further provides that an inspection shall be made at least every three months or as often as necessary. A violation of any of the provisions of the ordinance is made a criminal offense, punishable by a fine not to exceed $19 and $1 costs. Ordinance No. 4493, amending section 6 of Ordinance No. 4485, supra, prohibits any violation of the city ordinances or the laws of the state relating to gambling on the premises of any licensee; and prohibits the licensee from

permitting any intoxicated person to loiter about the premises, or from permitting persons who have congregated on the premises from using violent, abusive, vile or profane language in such manner as to disturb the quietude of the neighborhood. It further provides that upon request of a duly authorized inspector each licensee must furnish a sample of any nonintoxicating alcoholic beverage for the purpose of analysis and examination by the city chemist to determine its alcoholic content.

We have set out at length the provisions of the ordinance for the purpose of showing that the position of defendants herein that the ordinance is a police regulation enacted in the interest of the public peace, order, health, morals, safety, and general welfare of the people, is well taken. The authority of the city to enact ordinances of this nature is discussed in the case of In re Simmons, 4 Okla. Cr. 662, 112 P. 951, wherein it is said:

"Under the constitutional provision (section 3, art. 18, Const.) providing that 'any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state,' a city adopting a charter is accorded full power of local self-government, and, as such municipal corporation under its charter, it has power to enact, ordain, and enforce ordinances for the purpose of protecting the public peace, order, health, morals and safety of the inhabitants, even though general statutes exist relating to the same subjects.

"The adoption of the prohibition ordinance by the people, and the enactment of the prohibition law, does not prevent cities of the first class from enacting ordinances prohibiting the sale of intoxicating liquor within the limits of such cities.

"The same act committed by a person may constitute a crime against the state law and a different petty offense against the city ordinance. and, the two offenses being different, the offender may be proceeded against under either the city ordinance or the state law, or both."

See, also, Ex parte Simmons, 5 Okla. Cr. 399, 115 P. 380; Ex parte Bochmann, 20 Okla. Cr. 78, 201 P. 537; Ex parte Johnson, 20 Okla. Cr. 66, 201 P. 533; Cumpton v. City of Muskogee, 23 Okla. Cr. 412, 225 P. 562.

The only limitation on the ordinances of the city are that they must run in the same direction and not contrary to a state law. This is illustrated by the following quotation from the case of Ex parte Johnson, supra:

"Where the Legislature has made or may by general law make a specific police regulation, that fact of itself will not prevent the lawmaking power of a city from making further regulations on the same subject, not inconsistent with general laws. A municipality may move in the same direction as the Legislature, but not contrary to nor in an opposite direction."

In the case of Mitchell v. City of Lawton, 124 Okla. 60, 253 P. 999, it is said:

"A city ordinance which has for its purpose the prevention of an offense, or protection of the public morals, safety, or welfare, or prescribes rules for carrying on an occupation or business in order to prevent injury to the public, is, in its nature, a police regulation as distinguished from a revenue measure."

Evidence was offered on behalf of plaintiff to the effect that the approximate cost of the issuance of a license was 64 cents each; however, no evidence was offered as to the cost of regulation and inspection. Plaintiff contends that there would be no additional cost or expense for that purpose, since inspection and regulation were already provided by other city ordinances which would not be increased under the ordinance involved herein. The defendants introduced evidence showing that there would be approximately $5,340 in fees paid to the city under the provisions of the ordinance and the expense of issuing the licenses, inspecting and regulating the business would be approximately $7,515.60. The record is clear that the enforcement of the ordinance would create additional expense for inspection and regulation. The city chemist testified that it would be necessary to hire an additional assistant in his office for the purpose of making analyses of the beverages sold in Oklahoma City to determine their alcoholic content and it would be necessary to provide additional equipment for the same purpose. It was also shown that it would be necessary to assign three additional policemen to the liquor and vice squad to take care of the arrests necessarily made around the places where alcoholic beverages were sold. In the light of all the evidence it is evident that the fee charged by the city was not in excess of the actual cost of issuing the licenses and regulating and inspecting the businesses. Since the authority of the city to regulate the business of selling and distributing beer is admitted by counsel, conceded by my associates, and established by the authorities

hereinabove quoted, I shall express my views relating to the authority of the city to exact a fee commensurate with the actual cost of such regulation. As to this point, we are not without valuable precedent.

In 1915 the Legislature enacted chapter 173, Session Laws 1915, which in part provides:

"Sec. 3. * * * The registration fees imposed by this article upon motor vehicles, other than those of manufacturers and dealers, shall be in lieu of all taxes, general or local, to which motor vehicles may be subject as personal property under the laws of this state * * *

"Section 8. Subject to the express provisions of this article, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner to whom this article is applicable any tax, fee, license or permit for the free use of the public highways, or excluding or prohibiting any motor vehicle registered in compliance with this article from the free use of the public highways or the accessories used thereon, and no ordinance, rule or regulation in any way contrary to or inconsistent with the provisions of this article, now in force or hereafter enacted, shall have any force or effect. * * *"

Thereafter the city of Muskogee enacted an ordinance fixing an occupation tax of $25 per month upon jitney busses. The ordinance was declared invalid in the case of City of Muskogee v. Wilkins, 73 Okla. 192, 175 P. 497, for the reason that it was a revenue measure and not a license fee collected on account of necessary police regulation and prohibited by the above act. Therein it is said:

"It will be observed that the ordinance in question provides that the mere payment of the monthly tax entitles the one sought to be charged, as of right, to pursue the occupation of operating a jitney bus as defined in such ordinance. This court in Ex parte Mayes [64 Okla. 260, 167 749] supra, quotes with approval from Royall v. State of Virginia, 116 U. S. 572, 6 Sup. Ct. 510, 29 L. Ed. 735, as follows:

"'That the party complying with 'the statutory conditions is entitled as of right to the license is conclusive that the payment is a tax laid for revenue, and not an exaction for purposes of regulation. Mayor, etc., v. Second Ave. R. R. Co., 32 N. Y. 261; State v. Hoboken, 33 N. J. Law 280; 2 Dill., Mun. Corp. 766, c. 19, sec. 768. The occupation, which is the subject of the license, is lawful in itself and is only prohibited for the purpose of the license; that is to say, prohibited in order to compel the taking out a license, and a license is required only as a convenient method of assessing and collecting the tax. Cooley, Tax. 407. Such a license fee was held to be a tax by this court in the cases of Brown v. Maryland, 12 Wheat. (25 U. S.) 419, 6 L. Ed. 677, Ward v. Maryland, 12 Wall. (79 U. S.) 418, 20 L. Ed. 449, and Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347.'

"'Applying the foregoing doctrine to the particular provision of the ordinance under consideration, it would seem that the purported pecuniary imposition is an ineffectual attempt to tax for revenue, and not an exaction for the purposes of regulation. If the actual motive of the city authorities in passing and attempting to enforce such ordinance was to exercise the municipal police power for the purpose of regulation, yet it would appear from the face of the ordinance that the fee exacted is excessively disproportionate to a sum necessary to cover the expense to the city in the way of licensing, inspecting, and supervising the vehicles and occupation contemplated by the ordinance. This also specifically appears by the evidence and is in effect found by the court.'"

The city of Pawhuska also enacted an ordinance fixing a tax on taxicabs at $25 per annum. The ordinance recited that the tax was for the purpose of raising revenue. This ordinance was declared invalid in the case of Ex parte Mayes, 64 Okla. 260, 167 P. 749, as being in conflict with the act of the Legislature above referred to. The opinion concludes as follows:

"The purpose of the Highway Act, or at least one purpose, is to take from the municipal authorities the power to levy and collect a tax for the free use of the public highways, and that whether the tax be levied upon the vehicle, upon the owner, or upon the occupation in which he is engaged. The power to regulate and control, though in the form of a tax, and where the revenue to be collected is incidental to the regulation, is recognized as an existing right of the local authorities. This, we think, is clear. As the ordinance under which petitioner was authorized to engage in the business of transporting passengers for hire, and the statute under which the power to impose such taxes is delegated, does not contemplate an exercise of the police power and of the rights of taxation incidental thereto, but a tax upon the business for revenue only, it follows that the judgment of conviction for violation of the ordinance is a nullity, and that the petitioner should be discharged, which is accordingly ordered."

Thus in each of the cases it is shown that the ordinances sought to levy a tax for the purposes of revenue only, and the authority of the local authorities to exact a revenue incidental to a lawful regulation un-

der the police power is clearly recognized and carefully pointed out.

The city of Oklahoma City enacted an ordinance relating to motor vehicles for hire providing that all such vehicles should be registered with the city clerk and application be filed for a license and the license so received from the city clerk should be carried by the driver and displayed to any patron or public officer at any time; further providing that the vehicle should be subject to inspection and should not be operated for public use if found to be defective or unsafe; providing that if such vehicle be used in violation of the laws of the United States or the state or the city the certificate should be revoked; providing that certain parties should be disqualified as drivers of such vehicles; providing that a report be made of any change in drivers; providing for the giving of a bond on condition that the owner will respond in damages for any injury occasioned by his negligence; providing for a fee of $25 for the first car and $20 for each additional car, which fee should cover the cost of registration, supervision, and regulation. In the case of Ex parte Holt, 74 Okla. 226, 178 P. 260, the ordinance was held to be valid and not in conflict with the state laws hereinabove referred to. Syllabus paragraphs 1 and 2 of the opinion in said case are as follows:

" 'Under section 8, article 4, c. 173, Session Acts 1915, local authorities, such as cities, may "regulate vehicles offered to the public for hire," and in doing so may impose a license or fee when the purpose thereof is an exaction of regulation.' Ex parte Mayes 64 Okla. 260, 167 P. 749.

"The character of a municipal ordinance passed and sought to be enforced ostensibly for the purpose of regulation may be primarily determined from all of its provisions; and where no attempt appears thereby to raise revenue, as such, the only pecuniary charge imposed being designed merely to cover the expense of regulating an occupation which it is deemed desirous or necessary to subject to inspection and supervision in the interest of public welfare and safety, such charge will not be treated as a tax for revenue."

We quote further from the body of the opinion:

"Obviously, by reason of the legislative enactment, supra, there was withdrawn from municipalities generally the power to pass, enforce or maintain any ordinance, rule or regulation imposing a pecuniary charge in the nature of a tax, license, or permit for the free use of the public highways by motor vehicles which have been registered in compliance therewith. (Ex parte Shaw, 53 Okla. 654, 157 P. 900; Ex parte Phillips, 64 Okla. 276, 167 P. 221; and Ex parte Mayes, 64 Okla. 260, 167 P. 749); but by virtue of the first proviso in section 8, the office of which is at least to restrict the general language preceding it (Brewer v. Rust, 20 Okla. 776, 95 P. 233), 'the powers given to local authorities 'to regulate vehicles offered to the public for hire * * * remain in full force and effect.'

"Thus it appears that where a motor vehicle has been registered conformably to the statute, a city may under no circumstances impose a pecuniary charge either upon the vehicle or its owner for the use of the public highways, but whenever such vehicle is offered to the public for hire, however strictly the foregoing proviso may be construed, the intent of the Legislature to reserve to and authorize the exercise by municipalities of the powers elsewhere given to local authorities to regulate vehicles so offered is manifest.

"The power of regulation granted to the city in the instant case clearly carried with it the authority to use all lawful means to accomplish the purpose of the grant.

" 'As an incident to this form of police regulation, it is reasonable and just that the expenses be paid by those who make them necessary, and it is not unusual to require a fee from every person who seeks to engage in an occupation to perform an act of this character as a condition to the issuance of a license or permit to engage in the occupation or perform the act.' 19 R. C. L. 951.

"In Ex parte Mayes, supra, it is held:

" 'Under section 8, article 4, c. 173, Session Acts 1915, local authorities, such as cities, may "regulate vehicles offered to the public for hire," and in doing so may impose a license or fee when the purpose thereof is an exaction of regulation. But when the primary object of the local legislation is to afford a revenue, the ordinance pursuant to which the same is levied is invalid, and cannot be enforced.'

"While the rule is well settled that unless authority to tax be granted, pecuniary impositions by municipalities for revenue purposes under the guise of the police power cannot be made, yet the doctrine is almost universally recognized that although revenue may incidentally result from the undisputed exercise of police power by a municipality acting within the scope of its authority to regulate occupations or the use of property, this result does not divest the regulation of its police character and render it an attempted exercise of the taxing power."

30

Thus it is clearly pointed out that there is a definite distinction between a tax, license, or fee for the purpose of revenue and a tax, license, or fee for the purpose of enforcing a police regulation.

The majority opinion does not recognize this distinction, and I am unable to reconcile the rule therein announced with the doctrine of Ex parte Holt, supra. This distinction is carefully observed through all of the authorities.

In the case of Solberg v. Davenport (Iowa) 232 N. W. 477, it is said:

"Among the many powers possessed by the state there are two inherent powers with which we are concerned—one, known as the power of taxation; the other, as the police power. The police power in matters of this kind is usually exercised by way of a license. State v. Herod, 29 Iowa, 123; City of Des Moines v. Manhattan Oil Co., 193 Iowa, 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; City of Des Moines v. Bolton, 128 Iowa, 108, 102 N. W. 1045, 5 Ann. Cas. 906; State of Iowa v. Manhattan Oil Co., 199 Iowa, 1213, 203 N. W. 301.
* * *

"It is the general rule that, where the charge for the license is imposed in the exercise of the police power, the amount which may be exacted may include and must be limited and measured by the necessary or probable expense of issuing the license and such inspection, regulation, and supervision as may be provided for in the act and may be lawful and necessary. State v. Manhattan Oil Co., 199 Iowa, 1213, 203 N. W. 301; State v. Osborne, 171 Iowa, 678, 154 N. W. 294, Ann. Cas. 1917E, 497; Keckevoet v. City of Dubuque, 158 Iowa, 631, 138 N. W. 540.

"That there is a very definite distinction existing between a license fee when imposed under the police power and a tax imposed for revenue under the power of taxation is evidenced by the following cases: State v. Herod, 29 Iowa, 123; City of Des Moines v. Bolton, 128 Iowa, 108, 102 N. W. 1045, 5 Ann. Cas. 906; City of Ottumwa v. Zekind, 95 Iowa, 622, 64 N. W. 646, 29 L. R. A. 734, 58 Am. St. Rep. 447; 37 C. J. 169, and notes."

In the case of Blue Coach Lines, Inc., v. Lewis (Ky.) 294 S. W. 1080, it is said:

"Authority under police power to regulate occupations tending to injure public carries with it power to collect fees, which, in the aggregate, are sufficient to defray administrative expenses, and to also repair any special injuries attributable to the occupation regulated or to the means and instrumentalities employed by it."

In the case of Vassan, Treasurer of Schoolcraft County, v. Minneapolis, St. P.

& S. M. Ry. Co. (Mich.) 212 N. W. 78, it is said:

"License fees exacted under police power of state for purpose of regulation do not become tax unless they are out of proportion to reasonable cost of regulation."

In the case of Duff v. Garden City (Kan.) 251 P. 1091, it is said:

" 'Regulation charge' is one exacted for privilege or as condition precedent to carrying on business, and is exercise of police power, while 'occupation tax' is imposed under power of taxation."

See, also, Portland Van & Storage Co. v. Hoss, Secretary of State (Ore.) 9 P. (2d) 122; Pacific Tel. & Tel. Co. v. City of Everett (Wash.) 166 P. 650.

I am of the opinion that the Legislature in using the language set forth in section 11 of the act, supra, did not intend to curtail or abridge the right of cities, granted by general laws, to require the applicants for permit to conduct places of business to which the act relates to pay the necessary cost incurred in the issuance of said permit and in the reasonable and proper inspection and proper regulation thereof.

I therefore respectfully dissent.