**STATE ex rel. BOARD OF ED., CITY of TULSA, v. MORLEY et al.**

No. 25423.   May 15, 1934.

C. R. Rosenstein, for plaintiff.

J. Berry King, Atty. Gen., and Randell S. Cobb., Asst. Atty. Gen., for defendants.

L. L. Cowley, amicus curiae.

Silverman, Rosenstein & Fist, of Counsel.

Clay Tallman, O. C. Cash, J. H. Hill, Frank Orr, and Mastin Geschwind, amici curiae.

BUSBY, J.   This is an original action in mandamus in which the board of education of the city of Tulsa seeks to compel the excise board of Tulsa county and the members thereof to approve a request of the plaintiff for supplemental appropriations for current expenses of the Tulsa public schools (independent school district No. 22, Tulsa county).

On February 3, 1934, the plaintiff, in compliance with the requirements of section 12680, O. S. 1931, prepared and submitted to the excise board of Tulsa county a statement showing the financial condition of the Tulsa school district as of January 31, 1934. The statement reflected a cash surplus of revenue in the general fund in the sum of $114,805.09, derived from taxes levied and assessed for the fiscal year of 1930-1931 and prior years. There were no outstanding un-

paid warrants or unsatisfied debts for those years. However, the statement reflected deficits represented by outstanding unpaid warrants for the fiscal years of 1931-32 and 1932-33. It is not contended in this case that the financial statement submitted by the plaintiff was incorrect in any particular. Plaintiff requested that defendant excise board make supplemental appropriations in the aggregate amount of $111,460.51. On March 7, 1934, the defendant passed upon plaintiff's request and denied the same.

In defense of its refusal to grant the request for a supplemental appropriation, the defendant asserts that chapter 85, S. L. 1933, repealed by implication, or rendered inoperative when applied to the case at bar, that portion of section 12680, supra, authorizing a "surplus of revenue" to be used for supplemental appropriations. It also asserts as an additional defense that it is vested with discretionary power to determine the necessity for such supplemental appropriations, and that it was justified in refusing to grant the same as a proper exercise of its discretion.

The principal question to be determined in this case is: (1) Does chapter 85, S. L. 1933, prevent a surplus of revenue derived from taxes levied and assessed for previous fiscal years from being used for supplemental appropriations? For the reasons hereinafter stated, we have answered this question in the negative. This answer raises the additional question: May the excise board **in its discretion** refuse to make a supplemental appropriation at the request of a school district when the financial statement prepared and submitted by such district correctly reflects a surplus of revenue available for current expenses? These questions will be discussed in the order named.

The effect of chapter 85, supra, on the power to make supplemental appropriations depends upon the meaning of the language used in the act as well as the validity of the provisions thereof. A logical treatment of this case requires that we first determine the meaning of the provisions involved, reserving questions concerning validity for later consideration.

As a basis for considering the questions involved, we must recognize the statutory basis of the power to make supplemental appropriations from a surplus of revenue. Section 12680, O. S. 1931, provides in part:

"If the financial statement herein required shall correctly reflect a surplus in revenue in any fund available for current expenses, and the excise board shall so affirmatively find, it may make supplemental appropriations to an amount not exceeding the aggregate of such surplus."

It is conceded by the parties to this action and established by the previous decisions of this court that a surplus accumulated from taxes levied and assessed during previous fiscal years constitutes a "surplus of revenue" within the meaning of the above-quoted statutory provision.

It is also agreed that prior to the enactment of chapter 85, supra, when a "surplus of revenue" existed, it was available for supplemental appropriations. Protest of Cities Service Gas. Co. et al., 162 Okla. 131, 19 P. (2d) 546. It is asserted by the plaintiff and denied by the defendant that, notwithstanding the passage of the act, such a surplus is still available for such appropriations.

Chapter 85, S. L. 1933, purports only to amend section 12678, O. S. 1931. It does not refer to, purport, or pretend to alter, change, or repeal any of the provisions of section 12680, O. S. 1931, the section of the statute governing and authorizing supplemental appropriations. In the body of the amending act (chap. 85, supra) the following language is contained:

"The rates of levy for current expense, sinking fund and other purposes authorized by law shall be separately made and stated, and the revenue accruing therefrom, respectively, when collected, shall be credited to separate fund accounts to be designated and known respectively as the general fund, sinking fund and special funds according to the purposes of the levy. **If and when a surplus of cash shall accrue in any fund account, the same shall forthwith be transferred to the same fund for the next succeeding year.**" (Emphasis ours.)

The emphasized portions of the act are said by the defendant to repeal by implication or render inoperative the provisions of section 12680, authorizing supplemental appropriations to be made from a surplus balance of revenue for the asserted reason that it requires such surplus to be **forthwith** transferred from the fund of the current fiscal year to the same fund of the next succeeding year, thereby rendering it impossible to use the same to meet the needs of the current year. On the other hand, counsel for the plaintiff say, in substance, that little if any importance should be attached to the appearance of the word "forthwith," occurring in the portion of the act above quoted. They assert that:

"The proper, reasonable, and logical construction of the language contained in chap-

ter 85 of the Session Laws of 1933, hereinbefore referred to, is that any surplus received or accumulated during the present fiscal year, shall, at the proper time, to wit, June 30, or the end of the current fiscal year, be applied to the reduction of levies for the succeeding year, unless, in the meantime, pursuant to the authority granted by the terms of section 12680, O. S. 1931, such funds shall have been appropriated by supplemental or additional appropriations for current expense purpose for the present fiscal year."

The difficulty with this suggested construction is that it completely ignores the use and meaning of the word "forthwith" and places a strained construction on the language of the entire sentence in which the same appears. Judicial approval of such a construction would be judicial legislation. The presumption is that the Legislature expressed its intent in the statute, and that it intended what it expressed. McCarter v. State, 82 Okla. 78, 198 P. 303. Similarly, a statute should be given a construction which renders every word operative rather than one which renders some words idle and nugatory. Integrity Mutual Cas. Co. v. Garrett, 100 Okla. 185, 229 P. 282; Finnerty v. First National Bank, 92 Okla. 102, 218 P. 859; Board of Education of Oklahoma City v. Woodworth, 89 Okla. 192, 214 P. 1077; C., R. I & P. Co. v. State, 90 Okla. 173, 217 P. 147. It is true that in many cases the literal meaning of a statutory provision or of a word used in a statute is disregarded in order to carry out the manifest intention of the law-making body. However, no general intent appears from an examination of the act under consideration which is in any way inconsistent with the use of the word "forthwith," as applied to the disposition of surplus balances. We must, therefore, adopt a construction of the language used in the body of the act which is consistent with the use of that word in the act, and which attaches to it a significance in accord with its accepted meaning as a part of the English language. The word "forthwith," as defined by Webster, means "immediately; without delay; directly, hence within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch."

The interpretation urged by the plaintiff not only renders the word "forthwith" meaningless in the act, but it ignores the effect of the entire sentence in which it is used. This sentence did not appear in section 12678, O. S. 1931, before it was amended by chapter 85, supra. Without the appearance of that sentence in our law, it was settled in this jurisdiction that surplus balances existing at the end of a fiscal year constituted an asset of a municipality to be taken into consideration in making the levies for the succeeding fiscal year. For the reasons stated, we are unable to place the stamp of judicial approval on the construction of the language of the act urged by the plaintiff.

This brings us to a consideration of a suggested interpretation advanced in amicus curiae briefs filed by counsel for Oklahoma City and the Oklahoma City school district. They contend that the statutory provision under consideration requires that a surplus accumulating from the taxes levied and assessed for any previous fiscal year be transferred and credited to the same fund for the next succeeding year and thereby become available for the payment of outstanding warrants of that year. That if a surplus remains after the payment of warrants of that year, it is then required to be transferred into the funds of the next year, etc. Illustrating the operation of this rule, counsel for the Oklahoma City school district says in his brief:

"The construction contended for herein is that the surplus in the fund account from 1931-32 should go to the 1932-33 account and permit the retirement of any warrants and then any surplus balance again be carried forward to 1933-34 account where if a balance is found after warrants are paid the surplus should then be set up for reduction of the levy."

It is urged, however, that when a surplus accumulating from the taxes levied and assessed for previous fiscal years has traveled through the intervening fiscal year funds to the current fiscal year, it stops and is then available for supplemental appropriations under section 12680, supra. This for the asserted reason that, as a matter of bookkeeping, the fund for the fiscal year not yet commenced does not exist, and therefore there is no fund into which to make a transfer. However, the law is not made for the convenience of bookkeepers, and, if the statute creates a fund available only for the next succeeding year, it becomes the duty of those charged with the care and custody of that fund to establish such book entries as will correctly reflect its existence.

It is pointed out in support of this contention that under the law existing prior to the enactment of chapter 85, supra, a surplus of revenue created by the collection of taxes levied and assessed for a previous

fiscal year could not be used to pay outstanding warrants of the next succeeding fiscal year, but, on the contrary, must be treated as a "surplus of revenue" during the current fiscal year. In re C., R. I. & P. R. Co.'s Protest, 142 Okla. 242, 286 P. 316; In re Monsell, 142 Okla. 130, 285 P. 836; C. D. Coggeshall & Co. v. Smiley, 142 Okla. 8, 285 P. 48; Protest of Bledsoe, 161 Okla. 227, 17 P. (2d) 979. It is asserted that the operation of the rule recognized by the above cases is obnoxious to a sound municipal financial policy in that it permits outstanding warrants of previous fiscal years to continue to bear interest until sufficient taxes of that particular year are collected to retire them. That, in cases where the taxes collected for the particular year are insufficient, such warrants must be funded or merged in judgment and become sinking fund obligations, thereby increasing the rate of taxation for future years. Counsel contends that the result of the operation of this rule constitutes an evil, and that the portion of chapter 85, supra, under consideration was designed for the correction of that evil. They assert, and we agree, that courts should not favor repeals by implication. They urge that the adoption of the construction contended for by them harmonizes the provision of section 12680, supra, with those of chapter 85, supra.

Considered from the standpoint of the power to make supplemental appropriations from surpluses created from taxes levied and assessed for previous fiscal years, the construction urged by Oklahoma City and its school district would have about the same practical effect as the position urged by the defendant herein. Surpluses arising from the collection of taxes levied and assessed for a fiscal year seldom appear until a year or more has expired after the close of such fiscal year. Such surpluses would usually be absorbed by the outstanding warrants of intervening fiscal years. The financial condition of the Tulsa school district is illustrative of the practical operation of the rule urged. While a surplus of revenue in excess of $100,000 exists, arising from the fiscal year of 1930-31 and prior years, the fiscal years of 1931-32 and 1932-33 show deficits totaling an amount greatly in excess of that sum, which are evidenced by outstanding warrants. These deficits would completely absorb the surplus and render a supplemental appropriation from a surplus of revenue impossible. It is proper to observe at this point that, if the Legislature had intended to require surplus accumulated from levies of one year to be used to pay outstanding warrants of the next succeeding year, more appropriate language to express that intent could easily have been selected.

If we confine our attention strictly to the language appearing in the body of the act (chapter 85, supra), the construction urged by Oklahoma City and its school district has a strong logical appeal. In fact, it is difficult to determine from the language used in the body of the act whether it was the intention of the Legislature that the contemplated transfer of surplus should be from the fund of a past fiscal year to the fund of a succeeding fiscal year, also past, or whether the surplus accumulating from taxes levied and assessed for a previous fiscal year should be treated as a surplus of revenue accumulating during the current fiscal year and should be credited to the succeeding fiscal year not yet commenced. In this respect the meaning of the act is uncertain and ambiguous. The existence of this ambiguity authorizes us to bring to our aid in determining the legislative intent the appropriate and applicable rules of statutory construction. In the case of United States v. Fisher, 2 Crauch (6 U. S.) 358-386, Chief Justice Marshall, speaking for the court, said:

"Where the mind labors to discover the design of the Legislature, it seizes everything from which aid can be derived; and, in such case, the title claims a degree of notice and will have its due share of consideration."

Following the guidance of that able jurist, let us examine the title of the act under consideration. The concluding clause in the title reads: "requiring any surplus to be used in reducing appropriations and levies for succeeding year." A comparison of the various portions of the title of the act with the corresponding provisions in the body of the act, discloses that the portion of the title just quoted is the only portion thereof which may be said to anticipate the provision in the body of the act under consideration.

Approved estimates are appropriations (section 12681, O. S. 1931). Appropriations and levies for each fiscal year are made by the excise board during the fiscal year (section 12677, O. S. 1931, and sec. 12678, O. S. 1931, as amended by chap. 85, supra). It would be utterly impossible for a transfer of surplus from one fiscal year to the next succeeding fiscal year to operate to reduce either levies or appropriations, if the year into which the transfer was made had already expired.

Reference to the title of an act to eliminate uncertainty in the meaning of the language of the body of the act has met with almost universal judicial approval, especially in jurisdictions where constitutional provisions exist requiring the purpose of the act to be expressed in its title (see sec. 57, art. 5, Okla. Const.). In 59 C. J. 1005, sec. 599, it is said:

"In such jurisdictions as require by constitutional provisions the expression of the subject of the act in the title thereof, the title is a part of the act to be considered in construing it, and while it has been said that the title is no part of the act, the rule is well established that, in case of ambiguity in the purview, the title may be resorted to as an aid to ascertainment of the legislative intent, and may serve the purpose of removing the ambiguity by extending or restraining the purview of the act to conform to the evident intent of the Legislature."

In the case of Cohn v. People, 149 Ill. 486, 37 N. E. 60, 23 L. R. A. 821, 41 Am. St. Rep. 308, it is said:

"Formerly, when the title of acts was no necessary part of legislation, the title was not to be considered in construing the statute. Plummer v. People, 74 Ill. 361; Mills v. Wilkins, 6 Mod. 62; Endlich, Interpretation of Statutes, sec. 58, and note. It is, however, otherwise where, by virtue of constitutional provisions, the Legislature must prepare and adopt the title, to the end that it shall express the general purposes of the act. It cannot be resorted to to extend or restrain any positive provision in the body of the law itself." (Citing authorities.)

"It is one of the cardinal principles of construction that the intention of the lawmakers is to be found and given effect; and where there is otherwise doubt or obscurity in the act, or its meaning is doubtful, resort may be had to the title of the act, to enable the court to discover the intent, and remove what might otherwise be uncertain or ambiguous."

We therefore conclude that the uncertainty of the meaning of the words used in the body of the act is removed by reference to its title, and that the only logical construction of the provision of the act, having due regard to its title, is that the transfer of surplus funds contemplated by the act is from the present fiscal year to the next succeeding fiscal year (not yet commenced), in order that such fund may be taken into consideration in making levies and appropriations for the fiscal year not yet commenced.

In what we have said heretofore respecting the title to the act we have given due regard to the appearance therein of its concluding clause. We have not, however, approved the title as sufficient to comply with the requirements of our state Constitution (sec. 57, art. 5) with reference to amending section 12680, O. S. 1931. The title does not foreshadow an amendment or repeal of section 12680, O. S. 1931, relating to supplemental appropriations. Neither does it suggest the requirement that surpluses be **immediately** transferred when accumulated as required by the use of the word "forthwith" in the body of the act. As we have previously seen, it is the use **of this word in the body of the act which the title does not anticipate which causes this amending act to sweep out and apparently strike down or render inoperative the conflicting provisions of section 12680, supra,** under which supplemental appropriations have heretofore been made from surpluses of revenue. Having determined the meaning of the particular provisions, we now proceed to consider the validity thereof. Section 57, article 5, of our state Constitution provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended, or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length; Provided, that if any subject be embraced in an act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The purpose of a constitutional provision of this character is tersely stated in Cooley's Constitutional Limitations (8th Ed.) page 296, to be:

"First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have an opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

To the same effect this court said in the case of In re County Commissioners et al.,

22 Okla. 438, 98 P. 557, speaking through Chief Justice Williams:

"The abuses which called such provision into existence are clearly understood, and are twofold. Each subject brought into the deliberation of the legislative department of the government is to be considered and voted on singly, without having associated with it any other measure to give it strength. Experience had shown that measures having no common purpose, and each wanting sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws, when neither measure could command or merit the approval of a majority of that body."

In the case of State ex rel. v. Johnson, 90 Okla. 21, 215 P. 945, this court also held that the constitutional provision under discussion was entitled to "emphasized importance" in this state by reason of authority of the electorate to exercise the referendum provided by the Constitution. The court declared that one of the purposes of requiring a sufficient title was to advise the electorate of the effect of the legislative act, in order that the referendum power reserved to the people might be used in a timely and proper manner.

Considering the effect of this constitutional requirement on amendatory acts, it is said in Cooley's Constitutional Limitations (8th Ed.) p. 318:

"Under the title of an amendatory act, nothing can be enacted but what amends the old law."

In the case of Pottawatomie County v. Alexander, 68 Okla. 126, 172 P. 436, this court said in syllabus 1:

"An act to amend a particular section of a general law is limited in its scope to the subject-matter of the section proposed to be amended. Such amendment ex vi termini implies merely a change of its provisions upon the same subject to which the original section relates."

And in the body of the opinion in the same case:

"It is held generally that, where the title of the amendatory act specifies the section or sections to be amended, the amendment must be germane to the subject-matter of the section specified, and that amendments of other sections, not specified, will be void. * * *

"It may be that a particular section of a law may, by amendment, be broadened so as to bring within its provisions some particular matter which could logically and legally have been placed in it originally; but this matter must be something which had not already been provided for in an-

other section of the same statute which was proposed to be amended."

To the same effect, see Ex parte Masters, 126 Okla. 80, 258 P. 681.

The act under consideration (chapter 85, supra) is an amendatory act. It purports in its title and in the body thereof to amend only section 12678, supra. It contains the provision under consideration, which in effect amends and renders inoperative a portion of section 12680, supra. Both of the sections affected were originally a part of the same act. Chapter 226, S. L. 1917. The power to make supplemental appropriations was by the provisions of that act governed exclusively by section 8 thereof (sec. 12680). No reference to this power was made in section 6 of chapter 226, supra (sec. 12678). Yet chapter 85, S. L. 1933, which purports to amend only section 12678, if valid, amends or renders inoperative without reference thereto a part of the provision of section 12680.

In our judgment the provision of chapter 85, reading:

"If and when a surplus of cash shall accrue in any fund account the same shall forthwith be transferred to the same fund for the next succeeding year"

—in so far as such provision purports to require an immediate transfer of funds, is clearly in conflict with the salutary rule announced in the case of Pottawatomie County v. Alexander, supra.

It is stated in defendant's brief that a distinction may be drawn between the case at bar and the cited case, in that the title in the Alexander Case contained no words of description, whereas the title to chapter 85 contains words of description foreshadowing the contents of the body of the act. Assuming, without deciding, that the title to an amendatory act, purporting to amend one of several sections of the same act, may be broadened by the use of descriptive language to such an extent that other sections in the same act as the section amended may be thereby amended or rendered inoperative by implication, we would not thereby be led to alter the result announced in this case. As we have previously observed, the title does not prophesy the requirement of an "immediate" transfer of surplus funds in accordance with the use of the word "forthwith" in the body of the act.

Dealing with an analogous title in the case of State ex rel. v. Johnson, supra, this court said:

"The title to the statute under considera-

tion does not indicate, or, standing alone, does not even intimate, that the body of the act contains a provision whose tendency is to defeat the central purpose of an economic policy of the state."

Paraphrasing the language of that case, the title to the statute under consideration does not indicate, or, standing alone, does not even intimate that the body of the act contains a provision whose tendency is to destroy in a large measure the power to make supplemental appropriations by requiring an immediate transfer of surplus funds.

We therefore find it necessary, in order to uphold the basic law of this state as expressed in our Constitution, to declare that portion of chapter 85, supra, last above quoted invalid and unconstitutional. Our declaration in this respect is not to be taken as in any way affecting the validity of other parts or provisions of the amendatory act. It is likewise proper to state at this point that any surplus balance of revenue existing on the last day of the fiscal year must be taken into consideration in making the appropriation and levies for the next succeeding year, such having been the law prior to the passage of the act under consideration.

Having determined that the surplus balance of revenue accumulated from taxes levied and assessed for prior fiscal years is available for supplemental appropriations, we shall now determine whether or not the excise board is clothed with a discretionary power to determine the necessity for a supplemental appropriation for an independent school district. Section 12680, O. S. 1931, which governs the right and procedure to make supplemental appropriations, provides, in part:

"Whenever the public welfare or the needs of any county, township, city, town or school district shall require, the excise board may, on call of the chairman, convene at any time for the purpose of making supplemental or additional appropriations for current expense purposes; provided, that all such appropriations authorizing the creation of an indebtedness, shall come within the limitations of section 26, art. 10, of the Constitution. No supplemental or additional appropriation shall be made for any county, township, city, town or school district in excess of the income and revenue provided or accumulated for the year. As to all such proposed appropriations, the following procedure shall be followed."

This portion of the statute authorizes sup-

plemental appropriations only when the public welfare or needs of the county, city, town, or school district require it. Protest of City Service Gas Co. et al., 162 Okla. 131, 19 P. (2d) 546. It contains no language, however, which delegates to the excise board the power or authority to determine the necessity for such an appropriation. The state has a sovereign interest in the maintenance of common schools throughout the state (art. 13, Const. of Okla.; City of Ardmore v. Excise Board, 155 Okla. 126, 8 P. (2d) 2; Board of Education v. State, 26 Okla. 366, 109 P. 563; Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 94 113 P. 921), and might by reason of this interest delegate to the excise board the power to determine the necessity for supplemental appropriations of school districts. However, it has not seen fit to do so. On the contrary, the Legislature, in its wisdom and in recognition of the propriety of local self-government, has deemed it best to vest in a large manner the power to control and manage the public schools in the people of the locality in which such schools are situated. In order to accomplish this end, independent school districts have been authorized and given a distinct legal entity (article 9, chap. 34, O. S. 1931; sec. 6861, O. S. 1931). The boards of education elected by the people of such independent districts are authorized and directed "to organize and maintain a system of graded schools; to establish a high school whenever in their opinion the educational interests of the city demand the same, and to exercise the sole control over the school and school property of the city." (Sec. 6867, O. S. 1931). The management and control of the district affairs by school boards would be greatly hampered if the "purse strings" of the district were controlled by the discretion of a board such as the excise board, every member of which might be a nonresident of the district. We find no language in the supplemental appropriation statute, sec. 12680, O. S. 1931, which impels us to believe it was the legislative intent to destroy the power of local self-government by school districts in so far as the same relates to supplemental appropriations.

The defendant attaches some importance in this case to the appearance in section 12680 of the word "may," appearing in the second subdivision thereof, which reads:

"If the financial statement herein required shall correctly reflect a surplus in revenue in any fund available for current expenses, and the excise board shall so affirmatively find, it may make supplemental appropria-

tions to an amount not exceeding the aggregate of such surplus."

Respecting the use of this word, this court said in the case of Bartlesville Water Co. v. Brann, 166 Okla. 251, 27 P. (2d) 345:

"The excise board, in refusing to approve the estimate upon the showing made, was not exercising any discretionary power vested in it by law, but such act on its part was an arbitrary exercise of power. We do not agree that the word 'may' in the second subdivision of section 12680, supra, was intended to give any discretionary power to the excise board in allowing supplemental appropriations when the right to the same is fully shown."

While the cited case concerns a supplemental appropriation for a city, that difference affords no proper basis for a distinction in the meaning of the language used. It is rather a basis for distinguishing the legislative power to delegate authority to the excise board, and the sovereign interest of the state in school affairs would authorize a different and greater power to be delegated with respect to school districts. The question in this case, however, is, What has the Legislature done? Not what could it have done? In determining what it has done, we are guided by the meaning of language used in section 12680, supra, as previously interpreted by this court in the Bartlesville Case, supra.

We call attention to the fact that section 12677, O. S. 1931 (which relates to the power and authority of the excise board in making original appropriation and levies and which has no connection with supplemental appropriations), contained a provision which standing alone might be construed to give the excise board power to determine the necessity of appropriation for school districts. The provision reads:

"The said board shall have power and authority to revise and correct any estimate certified to them by either striking items therefrom, increasing, or decreasing items thereof, or adding items thereto, when in its opinion the needs of the municipality shall require."

In order that this clause might not have such an effect, the law-making body scrupulously preserved to school districts the power of local self-government in determining the necessities of the districts by providing in section 12675, O. S. 1931, that:

"The excise board shall have no power or authority to reduce the levy, so voted, and made at the school district meeting, neither shall the said board have the authority to reduce the estimate, unless the rate of levy so voted, shall be insufficient to raise the amount thereof, in which case the board shall reduce and adjust the items of the estimate to an amount within the limits of the levy."

By this provision the excise board was deprived of the power to appropriate less than the amount of the estimate made by the school district unless the levy required to meet the estimate should exceed the constitutional limit. State ex rel. Board of Education v. Excise Board of Payne County, 155 Okla. 227, 7 P. (2d) 473; Stockton v. Excise Board of Payne County, 155 Okla. 120, 8 P. (2d) 57; State ex rel. Con. Dist., etc., v. Excise Board of Payne County et al., 155 Okla. 121, 8 P. (2d) 66; State ex rel. Joint School District v. Excise Board of Payne County, 155 Okla. 122, 8 P. (2d) 58; Board of Education of Logan County et al. v. Excise Board of Logan County, 155 Okla. 214, 8 P. (2d) 683.

While our statutes contain no provision respecting the power of the excise board in connection with supplemental appropriations which corresponds to the provisions of section 12675, supra, the reason for the omission is at once apparent and obvious. There was no necessity for such a provision. The supplemental appropriation section of the statute (sec. 12680, supra) contained no provision corresponding to that quoted from section 12677. While the statutory provisions which we have just treated deal with original appropriations and levies as distinguished from supplemental appropriations, they are strongly persuasive of a consistent legislative intent to preserve in school districts the power of local self-government and to jealously guard against usurpation of that power by excise boards. For the reasons stated, we hold that the excise board is not vested with a discretionary power to determine the necessity for supplemental appropriations for a school district. The proper function of that board is to determine the correctness of the statement submitted by the school district and the existence or nonexistence of a surplus of revenue or unnecessary appropriations from which such supplemental appropriations could be made.

The writ of mandamus will be granted.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. RILEY, C. J., absent.