## Commonwealth v. Rodgers

*William Morgan*, for Commonwealth.

*William Bevevino*, for, defendant.

WOLFE, P. J., December 27, 1971.—This is an appeal by defendant from his conviction in the district magistrate's court in that defendant unlawfully operated an International Truck upon the public highways with a gross weight of 81,550 pounds when the permitted legal weight for such vehicle is 73,280 pounds, resulting in an overweight of 8,270 pounds and defendant was fined in accordance with the schedule of fines as provided in The Vehicle Code, as amended August 13, 1963, P.L. 761, sec. 2, 75 PS §903, in the amount of $860.

The facts are not grossly in conflict and, in the main, leave an issue of law to be resolved. The evi-

dence established on October 28, 1971, defendant was stopped by the Warren Borough police when they observed what appeared to be an overload on defendant's truck of stone or a subbase road material. Defendant was taken to an official weighing scale in the borough and was weighed out by the borough scales at 81,550 pounds. He was thereafter taken to the magistrate's court where defendant made two telephone calls and thereafter requested a reweigh. The Commonwealth admitted that it denied defendant's request for the reweigh, taking the position that the statute makes it mandatory for the operator to "forthwith" request the reweigh upon different scales, and defendant, in this case, did not make such request until he was arraigned before the magistrate. The entire length of time from defendant's arrest to the point of arraignment took approximately one-half hour to 45 minutes.

Defendant contends his request was made within a reasonable length of time and the Commonwealth should have permitted the reweigh, and since it acknowledges no reweigh was granted, the case should be dismissed. We partially agree with defendant; however, defendant will not be exonerated entirely, for reasons hereinafter set forth.

Section 904 of The Vehicle Code provides, as pertinent to this case, that when a peace officer having reason to believe that the gross weight of the vehicle is unlawful he is authorized to weigh the same and whenever the weighing shows that the gross weight is unlawful the operator may *forthwith elect to have the same reweighed* in which case the peace officer shall reweigh the same upon different scales. Subsection (c) of section 904 provides following a reweigh the weight found pursuant to the original

weigh or the weight found upon the reweigh, whichever shall be less, shall be deemed the actual weight.

The Commonwealth contends defendant did not "forthwith" request or elect a reweigh immediately following the original weigh indicating the overweight. We are of the opinion the Commonwealth is, under the circumstances of this case, interpreting the legislative intent too narrowly. The statute is silent as to what may be defined as "forthwith." It appears that the obvious intent of the legislature was to prevent the lessening of the load from the time of the original arrest to the time of the request for a reweigh considering all of the circumstances surrounding the case.

Here, the arrest was in October, the defendant's truck was impounded by the police during the course of the defendant's arrest and was held for a period of two days and the Commonwealth acknowledged that from the point of arrest to the point of time for request of reweigh was made no loss of weight could have occurred.

Black's Law Dictionary, Fourth Edition, defines "forthwith" as meaning "immediately; without delay, directly, hence within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch: State ex rel. Board of Education of City of Tulsa v. Morley, 168 Okla. 259, 34 P.2d 258, 261 . . . Within such time as to permit that which is to be done, to be done lawfully and according to the practical and ordinary course of things to be performed or accomplished. Harris v. Stewart, 187 Miss. 489, 193 So. 339, 342. The first opportunity offered. Abbott v. State, 117 Neb. 350, 250 N.W. 578, 579."

In the legal work, WORDS AND PHRASES, Volume 17,

"forthwith" is defined by numerous cases in different jurisdictions, including Pennsylvania. This state has defined that "forthwith" does not mean instantaneously, but within reasonable time: Drumbar v. Jeddo Highland Coal Company, 155 Pa. Superior Ct. 57; 37 A.2d 25, 27. This also appears to be the Federal rule as in U.S. v. Klee, D. C. Wash. 50 Fed. Sup. 679, holding courts have always held that when a duty is imposed to do an act "forthwith" the test is, was it done within a reasonable time.

"Forthwith" means a reasonable time: Pittsburgh V. & C. Ry. Co. v. Commonwealth, 101 Pa. 192, 196.

We hold, therefore, that considering the circumstances of this case where there was no showing of loss of weight or even a possible loss of weight during this relatively short period of time the defendant was denied his statutory right to a reweigh.

As stated, defendant asserts he must be discharged completely of the alleged violation. With this we do not agree.

The facts are unequivocal and undisputed by the defendant that he was given a weigh slip from the company in which his truck was loaded with a gross weight of 78,200 pounds. The statute permits a gross weight of 73,280 pounds. Therefore, at the time defendant left the weigh scale with his load he was aware he was 4,920 pounds overweight. Defendant argues this is of no moment since the Commonwealth did not comply with the statute. We cannot accept this reasoning as the Court is asked to close its eyes to an admitted violation or at least one that the defendant did not deny. There is no reason to disbelieve the Commonwealth's testimony to the effect when the defendant was stopped by the police officers the de-

fendant handed them a weigh slip upon their request indicating the overweight.

The statute is clear in this case. It provides no motor vehicle, and no combination of which a motor vehicle is a part, shall, when operated upon a highway, have a gross weight exceeding 73,280 pounds. The statute provides a table to calculate the amount of fine on the overweight. Here, it has been established by the Commonwealth beyond a reasonable doubt that the defendant was overweight 4,920 pounds. Under the penalty portion of the act in any case in which the gross weight of a combination exceeds 73,280 pounds the fine shall be doubled in accordance with the schedule set down in the schedule of fines.

A combination under The Vehicle Code is defined as: "Two or more vehicles physically interconnected in tandem, and propelled by the foremost vehicle when operated on a highway." Here, from all of the evidence, although there was no direct evidence on the point, it appears the defendant's truck would fall within a definition of a motor vehicle rather than a combination and thus the single fine is imposed of $270 calculated in accordance with the schedule of fines.

For the foregoing reasons the court makes the following order:

ORDER

And now, December 27, 1971, the sentence of the magistrate is vacated and the defendant is found guilty of operating a motor vehicle in violation of section 903 by carrying thereon an excess weight of 4,920 pounds and is sentenced to pay the costs of prosecution and a fine of $270.

Exceptions noted to the Commonwealth and to the defendant.

## Quinn Estate

Before Klein, Adm. J., Lefever, Saylor, Shoyer, Silverstein & Pawelec, JJ.

SILVERSTEIN, J., December 8, 1971.—By decree dated July 15, 1971, pursuant to petition filed by Manuel Kaufman, Deputy Welfare Commissioner of the City of Philadelphia, a citation issued directed to Kathryn M. Quinn to show cause why she should not be adjudged an incompetent and a guardian of her estate appointed. At the hearing on August 19, 1971, Francis I. Farley, Esquire, appeared on behalf of Kathryn M. Quinn. Kathryn M. Quinn was not present although Mr. Farley advised the court that he had written Miss Quinn two letters advising her to be present.

Sara Downey, a social worker in the Adult Services Department of Public Welfare, testified that she has visited Miss Quinn, who is 56 years old, once a week since February 1971. That from her observation, there was no heat in the house. The interior of the house is in poor condition. Miss Quinn keeps two dogs and two cats whose leavings cover the floors. Apparently, Miss Quinn makes no attempt to clean up the house. There are roaches and flies in abundance in the house. The plumbing is not operative and Miss Quinn uses a drain in the backyard as a toilet. Trash accumulates in the house and yard. An abatement crew from License and

Inspection spent two days cleaning out the house and yard but trash is accumulating again.

Miss Quinn receives a welfare check of $101.60 each month. Frequently, Miss Quinn denies that the check has arrived. Miss Downey has been in touch with the Philadelphia Electric Company which has threatened to terminate service for nonpayment of its bills. The gas company has also threatened to terminate service and advises Miss Downey that Miss Quinn refuses entrance to their meter reader. There are outstanding bills from the telephone, gas and electric companies, as well as Graduate Hospital ($29.00), Wanamaker's ($330.72), water and sewer taxes ($37.28) and real estate taxes ($168.35). Miss Downey testified that from her observation Miss Quinn is incapable of making decisions concerning her day-to-day life. Sometimes she is lucid and at other times she has told Miss Downey that she feels she is living in a nightmare.

Miss Downey stated she had explained the nature of the guardianship proceedings to Miss Quinn, who had only laughed. It was Miss Downey's opinion that Miss Quinn did not understand the nature of the proceedings.

Mrs. John Lannutti, a niece of the alleged incompetent, confirmed Miss Downey's testimony concerning the conditions in which Miss Quinn is living. She stated that when she had visited the house years past, it was always neat and clean. She had not been to the house for two years before her visit in March 1971. That in the intervening period Kathryn Quinn's physical condition had deteriorated markedly.

Dr. Alfred Duncan, a psychiatrist with the Mental Health and Retardation Unit of the City of Philadelphia, testified that he examined Kathryn Quinn at the request of Miss Downey on April 28, 1971. He found no organic deficit and found her general health to be

unremarkable. He did, however, reach a diagnosis of residual schizophrenia. He stated that ". . . as one of the characteristics of residual schizophrenia, the likelihood of her being inclined to manage affairs to any degree is small." Dr. Duncan stated that the prognosis was that Miss Quinn's condition was likely to remain static. That she might improve if she would attend a mental health center and take medication, but she refused to do so.

The hearing was adjourned at the request of Mr. Farley to August 26, 1971. At the continued hearing, Mr. Farley stated that he had again contacted Miss Quinn for the purpose of securing her attendance at the hearing. Once again Miss Quinn was not present at the hearing. Mr. Farley then moved to dismiss the petition.

In considering the evidence and the motion to dismiss, I am aware that the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, 50 PS §3101, et seq., which empowers a court to declare a person mentally incompetent and to place such individual's business affairs in the hands of another for management is "a dangerous statute easily capable of abuse": Hoffman's Estate, 209 Pa. 357.

The Incompetents' Estates Act, as amended, provides under "Definitions": "(3) 'Incompetent' means a person who, because of mental infirmities of old age, mental illness, mental deficiency, drug addiction or inebriety, is unable to manage his property, or is liable to dissipate it or become the victim of designing persons": 50 PS §3102.

The standard of proof in incompetency proceedings has been repeatedly set forth by the Supreme Court: "Mental capacity and competency are to be presumed and before any person shall be deprived of the right to handle his or her own property and manage his or her

own affairs there must be *clear* and *convincing* proof of mental incompetency and such proof must be *preponderating*": Myers Estate, 395 Pa. 459, 462 (1959) (Court's emphasis.)

*Francis I. Farley*, for exceptant.

*Isador Kranzel*, Assistant City Solicitor and with him, *M. Leon Sussman*, Assistant City Solicitor.

*Martin Weinberg*, City Solicitor, contra.